UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNION CAPITAL LLC, a New York Limited Liability Company, | ) ) | |
| Plaintiff, | ) | Civil Action No. 16-cv-1343 (RJS) |
| | ) | |
| - against - | ) | |
| | ) | |
| VAPE HOLDINGS INC., a Delaware corporation, and ISLAND CAPITAL MANAGEMENT LLC, d/b/a ISLAND STOCK TRANSFER, a Florida Limited Liability Company | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW OF DEFENDANT VAPE HOLDINGS, INC. IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**PRESS LAW FIRM PLLC**
144 East 44th Street, Eighth Floor
New York, NY  10174
Telephone:  (212) 922-1111
Facsimile:   (347) 342-3882
mpress@presslawfirm.com

Defendant Vape Holdings, Inc. ("VHI") submits this memorandum of law in opposition to the motion of Plaintiff Union Capital LLC ("Plaintiff") for unwarranted mandatory preliminary injunctive relief.  For the reasons stated herein, Plaintiff's motion should be denied in its entirety.

## PRELIMINARY STATEMENT

This action arises from Plaintiff's vindictive effort to commence a "death spiral" in VHI's publicly traded shares in retaliation for VHI's selection of another financier to purchase and consolidate $1 million in outstanding "toxic" convertible loans, including Plaintiff's convertible loan (the "Note").  Plaintiff has taken this egregious action although VHI has arranged with its new lender for Plaintiff to receive full value on the Note.

Plaintiff's motion should be denied, and this action dismissed, because this Court lacks personal jurisdiction or venue over VHI, and this action—for the conversion of a mere $7,000 in debt—fails to satisfy the amount in controversy requirement of federal diversity jurisdiction. More fundamentally, the motion should be denied because Plaintiff cannot establish that the extraordinary *mandatory* injunctive relief it seeks—specific performance of its purported conversion rights at the very inception of the case—is necessary or appropriate where its damages in the event of a breach are easily ascertainable under a formula in the Note itself. Furthermore, Plaintiff cannot establish that the Note is enforceable, in view of its usurious effective interest rate and toxic conversion terms.

Accordingly, as set forth below, Plaintiff's motion must be denied in its entirety, and this action dismissed.

**FACTUAL BACKGROUND**

On or about August 5, 2015, VHI issued to Plaintiff a $75,000 8% Convertible Redeemable Note (the "Note") with a maturity date of August 5, 2016.  *See* Vail Decl., Ex. A. The Note provides for what is known as "toxic" conversion rights.  Specifically, the Note states that Plaintiff may convert the outstanding balance of the Note into common stock of VHI at a price equal to *58%* of the lowest trading price of the common stock during the preceding thirteen days prior to conversion. *See* Vail Decl., Ex. A, § 4(a).  Due to the multi-week "lookback," and lowest intra-day trading price as factors on conversion, the Note may provide for conversion into common stock at as little as *50%* of the prevailing market price of VHI's common stock.

Aware that such terms are harmful to the public market in VHI's stock, Plaintiff approached VHI about a financing deal to "buy-out" the approximately $1 million of such toxic convertible debt on its books, if the other convertible noteholders would take a 25% discount on their notes.  *See* Declaration of Justin Braune ("Braune Dec.") ¶ 3.

VHI tried, but was ultimately unable to secure agreement by its noteholders to accept Plaintiff's low buy-out offer.  *See* Braune Decl., ¶ 3.  However, in its ongoing effort to remedy the situation, VHI was able to locate a third party financier to buy-out the $1 million in convertible debt—including Plaintiff's Note—at the full face value of the notes, including full principal and interest.  *See* Braune Dec., ¶ 4.

On February 10, 2016, VHI executed a term sheet with the financing partner and was able to secure a tentative agreement by a majority of its convertible noteholders to restructure and consolidate approximately $700,000 of the $1 million outstanding convertible debt. *See* Braune Dec. Ex. A.  Under the agreement, the noteholders would assign their notes to the new financier. *See* Braune Dec., Ex. A.  As a result, the financier would be the sole convertible

noteholder in VHI, preventing a "death spiral" of multiple noteholders converting their notes and driving down the price of VHI's publicly traded shares. *See* Braune Dec. ¶ 6.

During its negotiations with VHI, Plaintiff had tried hard to ensure no other parties were bidding against it. *See* Braune Dec. ¶ 3. When Plaintiff learned that VHI had rejected its low-ball offer, and had identified a new investor that was willing and able to buy out its shares, Plaintiff immediately cut off communications with VHI and retaliated. *See* Braune Dec. ¶ 7.

On February 11, 2016, only *one day* after VHI signed the competing term sheet, Plaintiff issued a notice of conversion purporting to convert $7,000 of debt into 5,232,644 share of VHI common stock.  *See* Notice of Conversion of Plaintiff, Vail Dec., Ex. D.  This was a clear attempt by Plaintiff to disrupt VHI's pending buy-out transaction. *See* Braune Dec. ¶ 7. Following receipt of the conversion notice, VHI determined that the Note violates New York's usury laws, and that Plaintiff intends to engage in securities fraud by, among other things, triggering a "death spiral" of VHI's shares. *See* Braune Dec. ¶ 9; Letter to Island Stock Transfer, Vail Decl., Ex. F.

VHI's financing partner remains committed to providing the full $1 million in financing to buy-out the remaining convertible notes, including Plaintiff's Note, and is in the process of acquiring portions of these notes. *See* Braune Dec. ¶ 8. To date, Plaintiff refuses to be bought out at full price, preferring instead to exact a pound of flesh for declining its unacceptable offer. *See id.*

## PROCEDURAL HISTORY

On February 22, 2016, Plaintiff commenced this action and moved *ex parte* for a Temporary Restraining Order ("TRO") and a preliminary injunction. *See* Dkt. No. 4.  On February 24, 2016, the Court denied Plaintiff's request for a TRO, holding that Plaintiff failed to

meet its burden of establishing irreparable harm and ordered VHI to show cause why a preliminary injunction should not be granted.  *See* Dkt. No. 8.

## ARGUMENT

### A.    The Court Lacks Jurisdiction over VHI and Venue is Improper

Before event reaching the merits, the Court must deny Plaintiff's motion and dismiss this action because the Court lacks jurisdiction over VHI, and venue is improper.  It is undisputed that VHI is a Delaware corporation, with its principal place of business in Chatsworth, CA.  *See* Compl. ¶ 5; Vail Dec. ¶ 6.  Plaintiff does not allege, let alone prove, that VHI has any jurisdictional contacts with the State of New York, or with the Southern District of New York. Instead, Plaintiff relies upon the consent to jurisdiction clause in § 14 of the Note, which Plaintiff mistakenly assumes confers jurisdiction and venue upon this federal district court.  *See* Vail Decl., Ex. A, § 14.

In fact, the plain language of § 14 of the Note *contradicts* Plaintiffs claim.  It states unambiguously that the parties "consent to exclusive jurisdiction and venue in the courts of *the State of New York*."  *Id.*[1]  Thus, in the Note, the parties consented exclusively to state court jurisdiction in the Supreme Court of the State of New York.  For this reason alone, Plaintiff's motion must be denied, and this action dismissed.

Furthermore, Plaintiff has improperly laid venue in this district.  Venue is appropriate where a defendant is subject to personal jurisdiction.  *See Hubbell Inc. v. Pass & Seymour, Inc.*,

---

[1] Where parties to a contract wish to submit to the jurisdiction of both state and federal courts in a district, they employ language far more explicitly committing them to jurisdiction of both the state and federal courts sitting in that district.  *See Beatie & Osborn LLP v. Patriot Sci. Corp*., 431 F. Supp. 2d 367, 390 (S.D.N.Y. 2006) (enforcing forum selection clause stating that "disputes shall be resolved in the federal or state courts of the City and State of New York, and the parties to this agreement consent to jurisdiction and venue in the City and State of New York.").

883 F. Supp. 955, 962 (S.D.N.Y. 1995).  Plaintiff provides no factual basis for its conclusory assertion that a substantial portion of the events alleged in its complaint took place in the Southern District of New York.  *See* Compl. ¶ 13.  On the other hand, Plaintiff admits that its members reside in Connecticut and its principal place of business is 338 Crown Street, Brooklyn, which is located within the Eastern District of New York.  *See id.* ¶¶ 2-4.  Because neither Plaintiff, nor VHI, is based in the Southern District of New York, and Plaintiff has alleged no facts taking place therein, venue in this district is inappropriate.  Once again, for this reason alone, the Court should deny Plaintiff's motion and dismiss the case.

**B.      The Court Lacks Subject-Matter Jurisdiction**

Plaintiff also fails to establish subject matter jurisdiction in this Court.  In this action, Plaintiff seeks a remedy for VHI's allegedly unjustified failure to convert $7,000 of debt into common stock.  *See* Compl. ¶¶ 25, 47, 54 & 62.  Thus, the amount in controversy is far less than the jurisdictional limit of $75,000 for federal diversity jurisdiction.  *See St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 293 (1938) (stating that the determination of the amount in controversy for purposes of diversity jurisdiction must be made on the face of the complaint).

In suggesting that the full $75,000 face amount of the Note may be in controversy, Plaintiff misreads the language of its own Note.  Section 8 of the Note provides that, if it is claiming a default of the full balance of the Note, Plaintiff must present a formal notice of acceleration—after which VHI would have a contractual opportunity to cure. *See* Vail Decl., Ex. A, § 8, p.5.  Plaintiff conspicuously fails to allege that it provided VHI with such notice of default and acceleration of the Note.  *See id.*  Thus, any claim by Plaintiff to the full $75,000 balance of the Note is premature.  Accordingly, Plaintiff's motion must be denied, and the action dismissed, on grounds of lack of federal subject matter jurisdiction.

C.     **Plaintiff Cannot Satisfy its Heavy Burden of Proving its Entitlement to a Mandatory Injunction for the Ultimate Relief Sought in this Action**

A plaintiff seeking a preliminary injunction must establish: (1) irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. *See, e.g., Gen. Mills, Inc. v. Chobani, LLC*, No. 3:16-CV-58, 2016 WL 356039, at *5 (N.D.N.Y. Jan. 29, 2016); *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F.Supp.3d 592, 604 (S.D.N.Y.2014).

A preliminary injunction is a drastic remedy that should not be routinely granted.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). However, as Plaintiff admits, in this motion it does not merely seek to preserve the *status quo*, but asks the Court to dramatically alter the *status quo*, and—at the very inception of the case—to grant Plaintiff the ultimate relief it seeks.  *See* Memorandum of Law in Support of Request for Temporary Restraining Order and Preliminary Injunction, dated February 22, 2016 ("Plf.'s Mem. of Law"), at 6 (citing *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 28, 33-35 (2d Cir. 1995); *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990)).  Under such circumstances, courts have held a movant seeking such a mandatory injunction to the far higher standard of demonstrating a *substantial* likelihood of success on the merits.[2]

---

[2] *See Tom Doherty Associates*, 60 F.3d at 33-34 (imposing higher standard where "(i) an injunction will alter, rather than maintain, the *status quo*, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits."); *Laurus Master Fund, Ltd. v. Valcom, Inc.*, No. 02 CIV. 1480 (WK), 2002 WL 432686, at *2 (S.D.N.Y. Mar. 19, 2002) (denying mandatory injunction for conversion of shares where damages were ascertainable).

### 1. Plaintiff has Failed to Show Irreparable Harm

Plaintiff cannot establish a clear showing of irreparable harm, because monetary damages are wholly adequate to compensate it for VHI's alleged breach of the Note.  Indeed, the Note specifically provides a calculation of Plaintiff's damages in such a case.

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir.1999). To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and that "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); *see Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."). If the movant fails to make a showing of irreparable harm, the motion for a preliminary injunction must be denied.  *See Rodriguez*, 175 F.3d at 234.

It is a long standing principle that, before a court may order specific performance, it must find that remedies at law are incomplete and inadequate to accomplish substantial justice.  *See Erie R. Co. v. City of Buffalo*, 180 N.Y. 192, 73 N.E. 26 (1904).  Courts have routinely denied specific performance of conversion rights where movants failed to demonstrate that monetary damages are inadequate.[3]

---

[3] *See Aristocrat Leisure Ltd., v. Deutsche Bank Trust Co. Americas*, 618 F. Supp.2d 280, 299 (S.D.N.Y. 2009) (noting that there is no dispute defendant's shares are available in the open market and the values of those shares on a given date are undisputed); *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2002) (denying specific performance in action involving publicly traded stock where "[t]here is simply no reason why, assuming a jury finds [defendant] liable for breach of contract, money damages would not adequately compensate [plaintiff] for [defendant's] breach"); *Simon v. Electrospace Corp.*, 28 N.Y.2d 136 (N.Y. 1971) (noting that specific performance is not appropriate where the claim involved publicly traded stock).

As the Court notes in its Order to Show Cause, "[t]he market price for stocks that are publicly traded, such as [VHI's], 'is generally considered to be ascertainable,' and Plaintiff has failed to give 'any plausible reason why this should not be the case here other than that the stock price fluctuates.'" Dkt. No. 8 at page 2 (quoting *Laurus Master Fund, Ltd. v. Valcom, Inc.*, No. 02-cv-1480 (WK), 2002 WL 432686, at *3 (S.D.N.Y. Mar. 19, 2002)); *see also Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 302 (S.D.N.Y. 2010) (citing *Simon, supra*, 28 N.Y.2d at 136).  In *Laurus Master Fund*, 2002 WL 432686, at *2, the court found that a lender seeking a mandatory injunction for the specific performance of conversion rights failed to establish that damages were inadequate, where there was a notice of conversion on a definite date, such that damages were ascertainable.

Here, Plaintiff likewise has not met its burden of presenting a clear showing of irreparable harm.  Specifically, Plaintiff has not shown why monetary damages are not sufficient or reasonably ascertainable in this case.  Plaintiff's admitted goal is to obtain free-trading shares and quickly sell them in the market for cash.  Thus, it is unclear why money, which is Plaintiff's sole goal and purpose, would not be an adequate remedy in this case.

Indeed, the Note itself contains a specific damage calculation for a failure to deliver shares.  Section 8 of the Note states:

> Make-Whole for Failure to Deliver Loss.  At the Holder's election, if the Company fails for any reason to deliver to the Holder the conversion shares by the by the [*sic*] 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the Company written notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows:
>
> **Failure to Deliver Loss = [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)]**

> The Company must pay the Failure to Deliver Loss by cash payment, and any such cash payment must be made by the third business day from the time of the Holder's written notice to the Company. (*Emphasis added*.)

If Plaintiff is entitled to a remedy in this dispute, it will not be difficult to calculate Plaintiff's damages pursuant to this formula, which Plaintiff itself inserted.

VHI has been publicly-traded for several years and has a large shareholder base and a liquid market. *See* Braune Dec. ¶ 12.  VHI common stock is not unique or peculiar, and its value to Plaintiff is only monetary in nature.  Furthermore, Plaintiff's variable conversion price is calculated as a discount to market with a multi-week "lookback." *See id.*  The fluctuation of VHI's common stock price has literally no impact on the ability to calculate damages that would be owed to Plaintiff.  *See id.*

Plaintiff's suggestion that VHI may be unable to satisfy a judgment is a disingenuous red herring.  VHI's financial solvency and ability to pay a monetary judgment is supported by its two years of consistent revenue and new product lines, its financing partner standing by with up to $1 million in financing set aside to buy-out its toxic debt, and the fact that Plaintiff itself was willing to invest approximately $750,000 in VHI just a day before the commencement of this dispute. *See* Braune Dec. ¶¶ 3, 6, 7.

Plaintiff cites several unpublished cases and court orders that have ordered conversion. Upon closer inspection, each of these cases is distinguishable.  Damages are easily calculated and there is a liquid public trading market for the securities.  *Compare Ticor Tit. Ins. Co. v Cohen*, 173 F3d 63, 68-69 (2d Cir. 1999); *Register.com, Inc. v Verio, Inc*., 356 F3d 393, 404 (2d Cir. 2004). There is no contractual provision obligating VHI to seek an affirmative injunction to prevent a conversion.  *Compare Alpha Capital AG. v. Group Mgt. Corp.,* 02 CIV. 2219 (LBS), 2002 WL 31681798 at *3 (S.D.N.Y Nov. 25, 2002)).  There are no pending regulatory

investigations or extraneous circumstances that put the trading market of VHI in jeopardy. *Compare* C*eleste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc*. 01 CIV 91(CBM)). There is nothing in the record to show that VHI is insolvent (or even approaching insolvency) or unable to pay a judgment or generate revenue to pay such a judgment. *See AJW Partners, LLC v. Cyberlux Corp.*, 21 Misc. 3d 1109(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (distinguishing *Alpha Capital AG. v Advanced Viral Research Corp*., 02 CV 10237 (GBD), 2003 WL 328302, at *5 (S.D.N.Y Feb. 11, 2003) and declining to issue a preliminary injunction, noting the defendant had a viable product that it had the ability to sell and there is not a showing of substantial likelihood of inability to pay a monetary judgment).

Accordingly, it damages are an adequate remedy law and Plaintiff has not shown irreparable harm sufficient to warrant the extraordinary relief requested.

### 2. Plaintiff is Unlikely to Succeed On the Merits

As Plaintiff concedes, it must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success.  This is rightly so, because Plaintiff is seeking mandatory, rather than prohibitory, injunctive relief which will give Plaintiff essentially all of the relief it seeks. *See Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988)(citing to *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025–26 (2d Cir.1985)). Plaintiff cannot meet this heightened burden of establishing the merits of its claim.

VHI has substantial defenses, including that the Note violates New York's usury laws. Taking into account Plaintiff's conversion rights, the interest rate on the Note arguably is in excess of 300%.  Accordingly, the Note—and the conversion feature within it—is void and unenforceable.

Furthermore, lenders like Plaintiff focus predatory lending practices on small and micro-cap public companies with what is known in the industry as "toxic debt" or "death spiral"

financing. This practice has consistently drawn scrutiny from the SEC. *See SEC v. Rhino Advisors, Inc.*, 03- CIV-1310 (S.D.N.Y. Feb. 27, 2003); *SEC Investor Warning on Convertible Securities* (http://www.sec.gov/answers/convertibles.htm). The SEC has taken steps to curb such behavior in connection with public re-sales of such securities in related "PIPE" deals by amending SEC Rule 415 to curb such conduct. *See* John P. Cleary, Clogging the PIPEs: The SEC Cracks Down on "Death Spiral" Convertibles (July 2008), <http://www.procopio.com/userfiles/file/assets/files1/cs71-347.pdf>.

The SEC established Regulation SHO to further regulate short-selling practices that are so often associated with toxic, death spiral financing. *See* 17 CFR 242.200 *et seq*. These practices routinely involve violations of securities laws, including Section 10(b) of the Exchange Act and Section 17(a)(1) of the Securities Act, as well as beneficial ownership standards under Section 13(d) and Section 16(a) of the Exchange Act. VHI is one of several companies taking a stand against these practices and is considering counterclaims against Plaintiff following the resolution of this motion.

Accordingly, Plaintiff is unable to make the requisite clear showing that it is likely to succeed on the merits of its claims.

### 3. Balancing of the Equities and Public Interest Tips in VHI's Favor

Finally, equitable and public interest concerns fall squarely in favor of VHI. "Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir.1997). In each case, courts "must balance the competing claims of injury and must consider the effect on each

party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Amoco Production Co.*, 480 U.S., at 542, 107 S.Ct. 1396).

If the Court grants Plaintiff the extraordinary mandatory injunctive relief it seeks, VHI and its shareholders will suffer irreparable injury. Other noteholders will follow Plaintiff in converting their notes, and VHI will suffer a flood of massive dilution of its shareholder base. This will impact not only VHI's ability to conduct its business, but also the investments of VHI's many public shareholders. The risk of loss on the public markets, and public shareholders investing in VHI, is a strong factor against granting Plaintiff's motion.

### 4.  If the Court Grants Plaintiff's Motion, it Should Require a Substantial Bond

If the Court determines to grant Plaintiff's motion, which it emphatically should not, the Court should require Plaintiff to post a substantial bond. Although the Note contains language purporting to waive VHI's right to a bond, such conclusory language in a contract is not determinative. In *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.*, 01 CIV 91(CBM), Pls. Mem., Exh. A, which Plaintiff cites, Judge Knapp found that only in extraordinary circumstances should an injunction issue without a bond. Here, as set forth above, the grant of extraordinary mandatory injunctive relief could cause irreparable harm to the price of VHI's shares, and to VHI as a company. Accordingly, a bond to protect VHI against such harm is appropriate and necessary.

**CONCLUSION**

For the foregoing reasons, VHI requests that the Court deny Plaintiff's motion in its

entirety and grant all such other and further relief as the Court deems necessary.

Dated:  New York, New York
        March 1, 2016

                                Respectfully submitted,

                                **PRESS LAW FIRM PLLC**


                                By:   _/s/ Matthew J. Press_____
                                        Matthew J. Press

                                144 East 44th Street, Eighth Floor
                                New York, NY  10017
                                tel: (212) 922-1111
                                fax: (347) 342-3882
                                cell: (347) 419-0983


                                *Attorneys for Defendant Vape Holdings, Inc.*