UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNION CAPITAL LLC, a New York Limited Liability   :   Case No.: 16-cv-01343-RJS
Company,                                          :
                                                  :
            Plaintiff,                            :
                                                  :
   - against -                                    :
                                                  :
VAPE HOLDINGS INC., a Delaware Corporation, and   :
ISLAND CAPITAL MANAGEMENT LLC, d/b/a              :
ISLAND STOCK TRANSFER, a Florida Limited          :
Liability Company                                 :
                                                  :
            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY IN FURTHER SUPPORT
OF ITS REQUEST FOR A PRELIMINARY INJUNCTION**


Dated: March 4, 2016
       New York, New York

                                        LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                        *Attorneys for Union Capital LLC*
                                        65 Broadway, Suite 852
                                        New York, N.Y. 10004
                                        Tel. (646) 657-9623
                                        Fax (646) 351-0694
                                        jf@lawjf.com

**PRELIMINARY STATEMENT**……………………………………………...…………2-4

**POINT I.     PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION**………………………………………………………………...………..4-8

      A.  **Vape Is Likely Insolvent**……………………………………………………...4-6
      B.  **Damages Are Difficult To Ascertain**………………………………………...6-8

**POINT II. JURISDICTION IN THIS COURT IS PROPER**……………………………...8-11

      A.  **The Amount in Controversy Exceeds $75,000**…………..…………………..…8-9
      B.  **Venue in the Southern District of New York Is Proper**…………………......9-11

**POINT III. VAPE'S REMAINING ARGUMENTS ARE MERITLESS**………………….11

      A.  **The Note Is Not Usurious**……………………………………………………......11-13
      B.  **VAPE's Obligations to Perform Its Contractual Obligations**
          **Are Not Irreparable Harm**…………………………………………………...13
      C.  **VAPE's Attempts To Introduce Settlement Discussions Should Not Be**
          **Considered**……………………………………………………………………13-14
      D.  **VAPE Agreed to Waive Any Bond**……………………………….…………..14

**CONCLUSION**……………………………………………………………………………15

**Statutes**
17 CFR 230.144 (d)(1) ................................................................................................ 14
28 U.S.C. § 2201 ........................................................................................................... 2
Fed. R. Civ. P. Rule 65 .................................................................................................. 2

**Cases**

*Aristocrat Leisure Ltd., v. Deutsche Bank Trust Co. Americas*, 618 F. Supp.2d 280, 299 (S.D.N.Y. 2009) ................................................................................................... 7
*Brenntag Int'l Chemicals, Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir.1999) ..................... 6
*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) ...... 12
*Castle Creek Tech. Partners v. Cellpoint, Inc.,* 2002 U.S. Dist. LEXIS 23760, 2002 WL 31958696 (S.D.N.Y. Dec. 6, 2002)………………………………………………………6,12
*De Lorenzo v. Bac Agency, Inc*., 256 A.D.2d 906, 681 N.Y.S.2d 846, 848 (1998) ..................... 8
*DiFolco v MSNBC Cable L.L.C.*, 622 F3d 104, 112 [2d Cir 2010] ............................... 8
*Elden v Merrill Lynch, Pierce, Fenner & Smith Inc*., 08 CIV. 8738 RJS, 2011 WL 1236141, at *5 [SDNY Mar. 30, 2011] ................................................................................. 11
*Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) ..................................................... 11
*In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.,* 851 F. Supp. 556, 565 (S.D.N.Y. 1994) ................................................................................................................. 12
*Laurus Master Fund, Ltd. v Valcom, Inc.*, 02 CIV. 1480 (WK), 2002 WL 432686 [SDNY Mar. 19, 2002] .............................................................................................................. 6
*Laurus Master Fund, Ltd. v. Versacom Int'l, Inc*., 02CIV.5340(LTS)(MHD), 2003 WL 21219791 (S.D.N.Y. May 21, 2003) ................................................................................ 13
*Liberty USA Corp. v Buyer's Choice Ins. Agency LLC*., 386 F Supp 2d 421, 426 [SDNY 2005] 10
*Lucente v Intl. Bus. Machines Corp*., 310 F3d 243, 259 [2d Cir 2002] ..................................... 7
*Manfra, Tordella & Brookes, Inc. v. Bunge,* 794 F.2d 61, 63 n. 3 (2d Cir. 1986) ..................... 12
*Miller Planning Corp. v. Wells et al.,* 253 A.D.2d 859, 678 N.Y.S.2d 340, 341 (2d Dep't 1998) 12
*New Moon Shipping Co., Ltd. v MAN B & W Diesel AG*, 121 F3d 24, 29 [2d Cir 1997] ............. 9
*Register.com, Inc. v Verio, Inc*., 356 F3d 393, 404 [2d Cir 2004] ............................................. 6
*Shaw Group Holding, LLC v CAS Residential LCL*, 2:09-CV-00618-KJD, 2010 WL 3896127, at *2 [D Nev Sept. 28, 2010] ................................................................................. 11
*Simon v Electrospace Corp*., 28 NY2d 136, 140 [1971] ........................................................ 7
*St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 293 (1938). ................................ 8
*Ticor Tit. Ins. Co. v Cohen*, 173 F3d 63, 68-69 [2d Cir 1999] .................................................. 6
*Union Capital LLC v Puget Technologies Inc.* 15-cv-09542-RA, Docket Entry. No. 19 ........... 13

Plaintiff Union Capital, LLC ("Plaintiff" or "Union"), respectfully submits this memorandum of law in reply and in further support of its motion, under Fed. R. Civ. P. Rule 65 and 28 U.S.C. § 2201, for a temporary restraining order, preliminary injunction and for preliminary declarative relief against Defendant Vape Holdings Inc. ("VAPE") and Island Capital Management LLC d/b/a Island Stock Transfer[1] ("Island").

## PRELIMINARY STATEMENT

VAPE recently filed its 10-Q, which, in VAPE's own words, "raise substantial doubt about the ability of Vape to continue as a going concern". See 10-Q, p.7, Vail Dec. Ex. H.  VAPE's likely insolvency constitutes *prima facia* irreparable harm.  In response, VAPE claims the Court should disregard its admission as to its likely insolvency as provided in its public filings based upon a non-binding term sheet that it claims will hopefully provide it some financing. Not only are the non-binding terms of the term sheet illusory, but the non-binding term sheet is dated *prior t*o the 10-Q filing admitting "substantial doubt to continue as a going concern".

In an effort to distract the Court from its admitted and flagrant breach of the agreements, VAPE improperly attempts to cast aspersions upon plaintiff's motives by introducing previous, non-admissible, settlement negotiations and by calling plaintiff a "death spiral lender" who issues "toxic loans".  Defendant's improper name calling and introduction of settlement negotiations should not be countenanced.  Moreover, plaintiffs exercised their right of conversion almost exactly 6 months to the day from the waiting period required by Rule 144; the timing of the

---

[1] Island has not responded to this motion.  However, upon information and belief, after the filing of this action, Island resigned as transfer agent for VAPE.  Regardless, VAPE's obligations to honor the conversion notice is independent of who is currently serving as transfer agent. See Vail Dec., Exhibit C, p.2 (which requires the VAPE to appoint a new transfer agent with 5 days, under the same terms).

2

conversion makes clear that plaintiff's actions are entirely proper. More importantly, when it comes to offering valid legal arguments, VAPE's response is unsurprisingly sparse.

VAPE offers several meritless technical arguments as to why it should not be compelled to comply with the SPA and Note as part of plaintiff's application for an injunction --that VAPE admittedly consented to as part of the relevant agreements. First, VAPE claims that the amount in controversy is below $75,000.00. Not only does plaintiff properly plead damages of $75,000 on the face of the complaint—which is the primary factor at the pleading stage—but VAPE admittedly repudiated the entire agreement and affirmatively stated that it will not honor future conversion notices--which is why plaintiff seeks damages of $75,000 and an order in the complaint, *inter alia*, also requiring VAPE to honor future conversion requests. VAPE claims that the entire $75,000 balance is not due because the Note was "not accelerated", when in fact, the relevant agreements explicitly provide that defendants waive notice of acceleration. See Note at 6, Ex. A to Vail Dec. ("the Company hereby expressly waives demand and presentment for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate")

Defendant also claims that the Court lacks jurisdiction because venue is somehow improper. In fact, VAPE explicitly waived these argument and consented to venue in the Southern District of New York in the SPA, 5(a) which provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws. Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be bought **only in the state courts of New York or in the federal courts located in the state and county of New York.** The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on· lack of jurisdiction or venue or based upon forum non convenience. (Emphasis added)

Moreover, to the extent VAPE claims that the Note contradicts the SPA and required venue elsewhere, it is well established that when an ancillary agreement such as the Note (which is an exhibit to the SPA) is contradicted by the overarching agreement such as the SPA, the overarching agreement governs.

VAPE further claims in conclusory fashion—without citing a single case in support—that the Note is usurious. In fact, as noted in our moving papers (and unexplained in VAPE's opposition), Courts have repeatedly enforced the validity of convertible notes.

VAPE asserts that it will be harmed if the Note is enforced because then other noteholders will seek to have their notes enforced. In fact, that is precisely what VAPE bargained for when it entered into these agreements. VAPES unwillingness to comply with its contractual agreements does not constitute irreparable harm.

Accordingly, for the reasons set forth herein, the application should be granted.

## POINT I.
## PLAINTIFF WILL SUFFER IRREPARABLE HARM
## ABSENT AN INJUNCTION

### A. Vape Is Likely Insolvent

Vape's 10-Q demonstrates that Vape is likely insolvent and will be unable to pay any ultimate judgment. The 10-Q (Exhibit H, Vail Dec. at p.7) states as follows:

> VAPE's consolidated financial statements reflect a net loss of $1,126,720 during the three months ended December 31, 2015. As of December 31, 2015, we had cash of $47,605 and a working capital deficit of $331,421. VAPE has suffered an accumulated deficit of $27,737,762.... **In addition, the ongoing need to obtain financing to fund operations also raise substantial doubt about the ability of Vape to continue as a going concern.** Management expects to obtain funding for operations for the foreseeable future; however, there are no assurances that the Company will obtain such funding. VAPE's financial statements do not include any adjustments to reflect the possible effects on recoverability and classification of assets or the amounts and classification of

4

liabilities that may result from the inability to continue as a going concern. (emphasis added)

Thus, VAPE admittedly casts doubt on its ability to remain as a going concern. In the Form 10-Q, Vape reports Assets of only $931,717, yet reports Liabilities of $1,351,014.00. Thus, Liabilities exceed assets by $419,297.00. Vape also reported a Net Operating Loss of $432,000.00, along with Other Expenses of $693,888 and a Total Loss for the quarter of $1,126,720.00.

In opposition, VAPE also claims that, contrary to the information provided in its 10-Q that was filed only last week, it is not insolvent notwithstanding the fact that its debts far exceed its assets. VAPE offers the conclusory claim that it is not insolvent based upon a terms sheet that explicitly provided that it is "an indication of interest only" and "non-binding pending execution of a definitive agreement". See Braune Dec., Ex A at p.1. In fact, the non-binding term sheet is dated February 10, 2016—*prior* to the filing of the 10-Q on February 22, 2016, whereby VAPE admitted its insolvency. Moreover, the terms of the non-binding term sheet[2] assume that each note holder will accept VAPE's offer to buy out the notes at terms materially different than those bargained for, do not provide for a conversion option for other noteholders and provide only to pay out the notes over several months. There is no evidence that the noteholders will accept this offer, and given VAPE's refusal to honor its existing notes, it is difficult to believe that it will have an easy time accessing future financing.

Accordingly, UNION will suffer irreparable harm if the requested injunctive relief is not awarded, as Vape will likely be unable to pay any damages ultimately awarded at the conclusion of this action. The likely inability of a defendant to respond in damages at the end of a case

---

[2] Notably, the non-binding term sheet provides that the lender may convert its proposed loan into shares at a 45% discount, strikingly similar to the terms that PUGE claims is somehow illegal and the basis of its failure to honor the conversion notice.

5

constitutes irreparable harm warranting injunctive relief[3]. *See Castle Creek Tech. Partners v. Cellpoint, Inc*., 2002 U.S. Dist. LEXIS 23760, 2002 WL 31958696 at *3 (S.D.N.Y. Dec. 6, 2002) ("If CellPoint is no longer a going concern at the close of litigation, an injunction ordering the delivery of CellPoint shares would be pointless, and Castle Creek would be left without the converted shares and without the option of obtaining a money judgment for the outstanding debt amount, thus suffering irreparable injury."); *Brenntag Int'l Chemicals, Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir.1999) (irreparable harm found where available remedy might be meaningless by the close of the litigation).

Given VAPE's likely insolvency, the Court should grant the request for an injunction.

### B. Damages Are Difficult To Ascertain

As noted in our initial moving papers, given the volatile nature of plaintiff's stock, damages are difficult to ascertain. *See. Ticor Tit. Ins. Co. v Cohen*, 173 F3d 63, 68-69 [2d Cir 1999] ("irreparable harm was shown where "it would be very difficult to calculate monetary damages"); *Register.com, Inc. v Verio, Inc*., 356 F3d 393, 404 [2d Cir 2004] ("irreparable harm may be found where damages are difficult to establish and measure")

In light of the Court's decision allowing plaintiff to supplement to add VAPE's 10-Q, the case cited by the Court in the Order to Show Cause, *Laurus Master Fund, Ltd. v Valcom, Inc.*, 02 CIV. 1480 (WK), 2002 WL 432686 [SDNY Mar. 19, 2002], is distinguishable in several ways. First, in our case, VAPE's 10-Q demonstrate that it is insolvent and will be unable to satisfy any judgment. By contrast, in *Valcom*, the Court explicitly relied on the fact that "Valcom's financial statements show that it has sufficient resources to satisfy any potential judgment in plaintiff's favor.

---

[3] *AJW Partners, LLC v Cyberlux Corp.*, 21 Misc 3d 1109(A) [Sup Ct 2008], cited by defendant, is easily distinguishable as it did not involve a situation, whereas here, VAPE itself admits "substantial doubt about the ability of Vape to continue as a going concern" in its 10-Q.

6

The complaint alleges at least $3.8 million in damages. As of December 31, 2001 Valcom's balance sheet showed net assets of greater than $6 million" *Id.* At *3. In our case, the exact opposite is true. Second, in *Valcom*, the Court noted that plaintiff had not shown a likelihood of success on the merits because it was not permitted to own more than 4.99% of the stock, and the conversion notice in that case would have put the plaintiff above that threshold. By contrast, in our case, there is no such restriction and in fact, it is clear that VAPE breached the plain terms of the agreements. In fact, the 10-Q repeatedly acknowledges the debt that is owed to plaintiff pursuant to the convertible note. See 10-Q at p.18. Vail Dec. Ex H. Third, in *Valcom*, the Court relied on the fact that damages were ascertainable because the stock was publically traded and the defendant had failed to honor a single defined conversion notice. By contrast, the Court noted that it might have reached a different result, as did other Court's in this district, where "plaintiff sent a letter stating that it would no longer honor its conversion requests". *Id* at *4. In fact, in our circumstance, defendant, through its counsel, has explicitly told Union it would not honor this, or any, "future conversion" thereby bringing this case precisely on point with the other Court's in the district that have granted injunctions in identical situations[4]. See Vail Declaration, Exhibit E, p. 1.

---

[4] This same distinction refutes VAPE's claim that damages are ascertainable because the agreements provide a formula providing for calculation of damages based upon a failure to honor a defined notice of conversion. While this formula may be helpful in calculating damages in the event of a single conversion notice, it will not assist in calculating damages for a refusal to honor all future conversion requests, which VAPE admittedly said it will not do. Union is not clairvoyant, and cannot reasonably calculate damages for future conversions, which is the exact distinction made by the *Valcom* Court, and which, under the *Valcom* analysis, would constitute irreparable harm. Likewise, the cases cited by defendant in support of the claim that damages can be measured also deal with the refusal to honor specific conversion notices as of a specific date or explicitly did not deal with an anticipatory repudiation. *See Aristocrat Leisure Ltd., v. Deutsche Bank Trust Co. Americas*, 618 F. Supp.2d 280, 299 (S.D.N.Y. 2009) (defined conversion notices);*Lucente v Intl. Bus. Machines Corp*., 310 F3d 243, 259 [2d Cir 2002] (rejecting anticipatory repudiation claims based upon circumstances of case and therefore requiring only damages instead of specific performance); *Simon v Electrospace Corp*., 28 NY2d 136, 140 [1971](dealing with a delivery of stock on a defined date consisting "a fee of 5% of the gross value of the transaction will be paid as a commission at the time of closing")

Accordingly, plaintiff will suffer irreparable harm in absence of an injunction[5].

## POINT II.
## JURISDICTION IN THIS COURT IS PROPER

Although VAPE did not request permission to file a motion to dismiss based upon the supposed lack of jurisdiction or improper venue –and offers no arguments that such considerations are relevant to likelihood of success on the merits—Union will address each of these arguments in turn.

### A. The Amount in Controversy Exceeds $75,000

VAPE claims that the amount in controversy is below $75,000.00. First, plaintiff properly pleads damages of $75,000 on the face of the complaint—which, as noted in the case VAPE itself cites, is the primary factor at the pleading stage. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

Moreover, VAPE admittedly repudiated the entire agreement and affirmatively stated that it will not honor future conversion notices[6]-- which is why plaintiff seeks an order in the complaint and as part of this motion, *inter alia*, also requiring VAPE to honor future conversion requests and damages of the full Note amount of $75,000.00.; *De Lorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906, 681 N.Y.S.2d 846, 848 (1998) (indicating that repudiation occurs where "the repudiating party has indicated an unqualified and clear refusal to perform"); *DiFolco v MSNBC Cable L.L.C.*, 622 F3d 104, 112 [2d Cir 2010](where the repudiation is in writing, "the court may resolve the issue of repudiation "as a matter of law"),

---

[5] VAPE also fails to address the argument that it consented to the injunction being sought, which, as noted in our moving papers, is an additional basis for the issuance of an injunction.
[6] See Vail Dec. Ex. E at p. 1 where defendants counsel notes that "We have informed Island Stock Transfer of this rejection, and the factual and legal reasons for so doing, to stop Union's attempted conversion and any future conversions".

VAPE claims that the entire $75,000 balance is not due because the Note was not formally accelerated, when in fact, the relevant agreements explicitly provide that defendants waive notice of acceleration[7]. See Note at 6, Ex. A to Vail Dec. ("the Company hereby expressly waives demand and presentment for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate"). Given defendants admitted refusal to pay a single dollar of the $75,000 note, plaintiff has easily met its burden of establishing the minimum amount in controversy.

### B. Venue in the Southern District of New York Is Proper

Defendant also claims that the Court lacks jurisdiction because venue is somehow improper. In fact, VAPE explicitly waived these argument and consented to venue in the Southern District of New York in the SPA, 5(a) which provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws. Any action brought by either party against the other concerning the transactions contemplated by this Agreement **shall be bought only in the state courts of New York or in the federal courts located in the state and county of New York.** The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on· lack of jurisdiction or venue or based upon forum non convenience. (Emphasis added).

It is well established that "the choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts". *New Moon Shipping Co., Ltd. v MAN B & W Diesel AG*, 121 F3d 24, 29 [2d Cir 1997].

---

[7] VAPE claims that the Note requires Notice of Acceleration. As noted in Section 6 of the Note, VAPE expressly waived such notice. Contrary to VAPE's claims, section 8 of the Note does not require a notice of default, and once again, expressly notes that all notices are waived.

Moreover, to the extent VAPE claims that the Note contradicts the SPA and required venue elsewhere, it is well established that when an ancillary agreement such as the Note (which is an exhibit to the SPA) is contradicted by the overarching agreement such as the SPA, the overarching agreement governs. In this instance, the SPA was the primary document, which provided for the purchase of the Note; the Note itself was merely an exhibit to the SPA. See Vail Dec., Ex B, p.1 ("Buyer desires to purchase and the Company desires to issue and sell , upon the terms and conditions set forth in this Agreement  two 8% convertible  notes of the Company,  in the forms attached hereto as Exhibit A and B … convertible into shares of common stock").

In *Liberty USA Corp. v Buyer's Choice Ins. Agency LLC*., 386 F Supp 2d 421, 426 [SDNY 2005] the Court addressed a nearly identical issue, where an Asset Purchase Agreement and Note contained competing forum selection clauses, and held that as the main document, the Asset Purchase Agreement governs. The Court stated as follows:

> Both the Promissory Note and the Asset Purchase Agreement were executed on the same day. Both Parties to the Promissory Agreement were also Parties to the Asset Purchase Agreement. In addition, the purpose of the two agreements was the same—the sale of certain assets held by the Sellers to the Buyer. In addition, the Promissory Note is explicitly incorporated into the Asset Purchase Agreement, and is specifically cited as part of the consideration for the contract. Furthermore, the Asset Purchase Agreement provided that the Promissory Note and the Guarantee executed by Terry Jacobs were to be delivered at Closing by the Buyer. Thus, the Promissory Note was incorporated in the Asset Purchase Agreement, was executed contemporaneously with that Agreement, by the same parties, for the same purpose, and both documents shall be construed as one contract. The Promissory Note's forum selection clause also was superseded by the forum selection clause in the Asset Purchase Agreement. Further, failure to make payments under the Promissory Note is necessarily a breach of the Asset Purchase Agreement, which provided that the purchase price would consist of the installment payments to be made pursuant to the Promissory Note. Therefore, the forum selection clause in the Asset Purchase Agreement, which states that Ohio law will govern the Agreement and that "all claims, disputes, or actions arising from this Agreement" shall be in a state court in Ohio, applies to this case.

Likewise, in our cases, the SPA and Note were executed the same day, by the same parties, for the same purpose and the Note is incorporated –and an exhibit to—the SPA.  Accordingly, the SPA governs and venue is proper in the Southern District of New York[8].  This and other Courts have accepted this exact principle.  *See Elden v Merrill Lynch, Pierce, Fenner & Smith Inc.*, 08 CIV. 8738 RJS, 2011 WL 1236141, at *5 [SDNY Mar. 30, 2011](citing *Liberty* and holding that "plain language of the contracts, read as a whole, demonstrates that the CMA Agreement, along with its New York choice-of-law clause, governs Plaintiffs' claims"); *Shaw Group Holding, LLC v CAS Residential LCL*, 2:09-CV-00618-KJD, 2010 WL 3896127, at *2 [D Nev Sept. 28, 2010] ("Where potentially conflicting clauses arise out of a single transaction and are contained in one overarching agreement, the venue provision in the main agreement controls.").

In addition to the forum selection clause, plaintiff properly pleads that a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated in the Southern District of New York[9]. Complaint ¶13.

Venue in the Southern District is therefore proper.

## POINT III.
## VAPE'S REMAINING ARGUMENTS ARE MERITLESS

A. **The Note Is Not Usurious**

---

[8] Additionally, if the parties intended for venue to be exclusively in State Court as defendant claims, then the portion of the  SPA that provide the action be brought in the "federal  courts located  in  the state and  county of New York" would be rendered superfluous. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) (contract should not be interpreted so as to render a clause superfluous or meaningless)

[9] There is no motion to dismiss pending nor has defendant offered any affidavit or evidence in admissible form that would cast doubt on the validity of the forum outside its claim under the terms of the Note, which, as discussed, is superseded by the SPA.  However, in the event necessary, plaintiff intends to demonstrate that both members of Union resided in New York at the time the Note was issued (and only later moved to Connecticut), that Union transacts business in New York, and that the loan to defendant was wired from a New York bank—in addition to the forum selection clause.

VAPE claims in conclusory fashion—without citing a single case in support—that the Note is usurious. In fact, as noted in our moving papers (and unexplained in VAPE's opposition), Courts have repeatedly enforced the validity of convertible notes. *See Castle Creek Tech. Partners v. Cellpoint, Inc.,* 2002 U.S. Dist. LEXIS 23760, 2002 WL 31958696 (S.D.N.Y. Dec. 6, 2002) (granting injunction to enforce a provision in convertible notes that allowed the notes to be converted for shares of the defendant's common stock)

VAPE's claim that Note is usurious is contradicted by the terms of the Note, which provides for interest in the amount of 8%. To the extent VAPE is claiming that default provisions are usurious it is "well established that the usury statutes do not apply to defaulted obligations." *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003); *See also, Manfra, Tordella & Brookes, Inc. v. Bunge,* 794 F.2d 61, 63 n. 3 (2d Cir. 1986) ("Usury law does not apply to defaulted obligations. Because interest was charged only on [defendant]'s past due debts, the usury laws do not apply."); *In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.,* 851 F. Supp. 556, 565 (S.D.N.Y. 1994) ("Any penalty interest rates or late fees assessed against the Plaintiffs do not constitute usury since New York's usury statutes do not apply to defaulted obligations."); *Miller Planning Corp. v. Wells et al.,* 253 A.D.2d 859, 678 N.Y.S.2d 340, 341 (2d Dep't 1998) ("the defense of usury does not apply where, as here, the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity").

Finally, plaintiff's right to convert the Note into shares of stock at a predetermined price is no different than any option agreement, and similar provisions have been repeatedly enforced by the Courts. *See Laurus Master Fund, Ltd. v. Versacom Int'l, Inc*., 02CIV.5340(LTS)(MHD), 2003

WL 21219791 (S.D.N.Y. May 21, 2003)(granting specific performance requiring debtor to specifically perform stock delivery pursuant to a convertible note); *Union Capital LLC v Puget Technologies Inc.* 15-cv-09542-RA, Docket Entry. No. 19 (granting injunction enforcing nearly identical note in case brought by the same plaintiff).

Likewise, while VAPE resorts to name calling, referring to the Note as a "toxic debt" and "death spiral" loan VAPE offers no substantive arguments as to why the Note is invalid. VAPE goes on to cite certain SEC rules and directives and vaguely implies that plaintiff has done something wrong. Unsurprisingly, VAPe offers no specifics as to how the Note is in any way illegal or unenforceable.

Accordingly, the Note is fully enforceable, and plaintiff is likely to succeed on the merits of its action.

B. **VAPE's Obligations to Perform Its Contractual Obligations Are Not Irreparable Harm**

VAPE asserts that it will be harmed if the Note is enforced because then, other note holders will also seek to have their notes enforced. In fact, that is precisely what VAPE bargained for when it entered into these agreements. VAPE's unwillingness to comply with its contractual agreements does not constitute irreparable harm. Unsurprisingly, VAPE cites no legal authority that would support this position.

C. **VAPE's Attempts To Introduce Settlement Discussions Should Not Be Considered**

In an effort to distract from its inexcusable conduct, VAPE attempts to introduce previous settlement negotiations between the parties in order to cast aspersions on plaintiff's motives. Not only is such material irrelevant to the merits of the claims and inadmissible and improper under Federal Rule of Evidence 408, it is also transparently inaccurate. VAPE's claim that this action was filed as some kind of vindictive effort to punish it for not accepting a settlement offer is

13

contradicted by the simple fact that plaintiff is prohibited by SEC Rule 144 from selling unrestricted stock from 6 months from the date of the Note. See 17 CFR 230.144 (d)(1). As the Note is dated August 5, 2015 and was funded on August 10, 2015, the plaintiff could not even attempt to convert the stock until February 10, 2016. The timing demonstrates that in fact, Union executed its first right of conversion on February 11, 2016, one day later. Union's actions are entirely proper.

### D.  DEFENDANT AGREED TO WAIVE ANY BOND

As noted in our moving papers, in this instance, defendants agreed to waive the bond. *See* Vail Decl. Exhibit B, at 5(l). ("Buyer shall be entitled…to an injunction or injunctions, restraining preventing, or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required").

Defendants offer no legal authority for their request for a bond and none should be required. Under the facts and circumstances in this case, there is no reasonable possibility that VAPE will suffer any monetary damages as a result of being compelled to comply with its contractual obligations. There is no likely possibility that VAPE will suffer any harm if the injunction is granted and UNION obtained the stock to which it is entitled. Consequently, the Court should dispense with the requirement of the bond.

To the extent the Court disagrees, the bond should be limited to holding any profits from the conversions in escrow.

## **CONCLUSION**

    For the foregoing reasons, the Court should award the relief requested in Plaintiff's Order to Show Cause.

Dated: March 4, 2016
      New York, New York

                      LAW OFFICE OF JEFFREY FLEISCHMANN PC
                      By: /s/Jeffrey Fleischmann
                      Jeffrey Fleischmann, Esq. (JF-3172)

                      *Attorneys for Union Capital LLC*
                      65 Broadway, Suite 852
                      New York, N.Y. 10004
                      Tel. (646) 657-9623
                      Fax (646) 351-0694
                      jf@lawjf.com