UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| UNION CAPITAL LLC, a New York Limited Liability Company, | : : : | Case No.: 16-cv-01342-RJS |
| Plaintiff, | : : | |
| - against - | : : : | **FIRST AMENDED COMPLAINT** |
| VAPE HOLDINGS INC., a Delaware Corporation | : : | |
| Defendants. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, Union Capital LLC, by its undersigned attorneys, for their complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for specific performance, a permanent injunction, breach of contract, breach of a third party beneficiary agreement and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities and related convertible note agreements. After entering into negotiated, arms-length agreements, for which defendant Vape Holdings Inc. ("VAPE") received valuable consideration, VAPE attempted to renegotiate the terms of the agreements. After plaintiff declined to renegotiate, VAPE retaliated by instructing their transfer agent to withhold the conversion of shares being held irrevocably for the benefit of plaintiff notwithstanding the fact that it had previously agreed to honor such conversion requests in connection with the issuance of the note. Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2.      Plaintiff Union Capital LLC ("Union" or "plaintiff") is a limited liability company duly organized under the laws of the State of New York and having a place of business located at 338 Crown Street, Brooklyn, New York.

3.      The members of Union are Chaim A. Vail and Yakov Borenstein, each of whom resides in the State of Connecticut.

4.      For purposes of diversity, Union is a citizen of Connecticut.

5.      Upon information and belief, Defendant Vape Holdings Inc. ("VAPE") is a corporation organized and existing under the laws of the State of Delaware having its principal place of business located at 21822 Lassen Street, Suite A, Chatsworth, CA.

6.      For purposes of diversity, VAPE is a citizen of Delaware.

7.      VAPE is traded publicly under the symbol "VAPE."

## JURISDICTION AND VENUE

8.      The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.      This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. section 1367(a).

10.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated.

11.     Additionally, in the relevant agreements, defendants consented to jurisdiction and venue in the Southern District of New York.

**FACT COMMON TO ALL CLAIMS FOR RELIEF**

12. On or about August 5, 2015, after arm's-length negotiations, VAPE executed a Securities Purchase Agreement and Convertible Redeemable Promissory Note to Union (the "Note") in the amount of $75,000. A true and correct copy of the Note is attached hereto as Exhibit A. A true and correct copy of the Securities Purchase Agreement ("SPA") is annexed as Exhibit B.

13. In connection with the negotiation of the various agreements, VAPE was represented by sophisticated counsel, including an individual by the name of Chris Tinen, Esq.

14. The Note provides that UNION, at any time after execution, has the right to convert all or part of the Note into shares of VAPE common stock (the "Common Stock"). Specifically, §4(a) of the Note provides in pertinent part:

> The Holder of this Note is entitled, at its option, at any time, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") …

Ex. A at 2, paragraph 4(a).

15. In order to convert the Note, UNION was required to submit a Notice of Conversion to VAPE. Accordingly, §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as <u>Exhibit A</u>.

16. As §4(a) of the Note dictates, the price at which each respective Note was convertible (the "Conversion Price") was to be determined "for each share of Common Stock to

be equal to 58% of the **lowest trading price** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded . . . for the *thirteen* prior trading days including the day upon which a Notice of Conversion is received by the Company or its transfer agent…"

17. Further, under §4(a), Notices of Conversion are to be "effectuated by the Company [VAPE] delivering the shares of Common Stock to the Holder within 3 business of receipt by the Company of the Notice of Conversion."

18. In order to ensure that sufficient shares are available for conversion, §12 of the Note provides that "[t]he Company shall issue irrevocable transfer agent instructions reserving 1,605,000 shares of its Common Stock for conversion under this Note (the "Share Reserve")." Further, the Note requires that, "[t]he Company should at all times reserve a minimum of four times the amount of shares required if the Note would be fully converted. The Holder [UNION] may reasonably request increases from time to time to reserve such amounts."

19. Concurrently with the Note, VAPE issued a letter to its transfer agent ("TA"), , noting that it was, and is:

> Irrevocably authorized and instructed to reserve a sufficient number of shares of common stock ("Common Stock") of the Company (initially, 1,605,000 shares of Common Stock which should be held in reserve for the Investor pursuant to the subject Note as of this date) for issuance upon full conversion of the Note in accordance with the terms thereof. The amount of Common Stock so reserved may be increased from time to time, by written instructions of the Company or the Investor.
>
> The ability to convert the Note in a timely manner is a material obligation of the Company pursuant to the Note. Your firm is hereby irrevocably authorized and instructed to issue shares of Common Stock of the Company (without any restrictive legend) to the Holder **without any further action or confirmation by the Company**…

VAPE's Letter to the transfer agent is attached as Exhibit C.

20. The Letter to the transfer agent further provides that: "The Company agrees that in the event that the Transfer Agent resigns the Company's transfer agent, the Company shall engage a suitable replacement transfer agent that will agree to serve as transfer agent the Company and be bound by the terms and conditions of the Irrevocable Instructions within five (5) business days…..The Investor is intended to be and are third party beneficiaries hereof and no amendment or modification to the instructions set forth herein may be made without the consent of the investor."

21. The conversion feature of the Note is a material term as investment in VAPE was exceedingly risky. Therefore, UNION was only willing to purchase the Note if it could earn a return commensurate with the risk. UNION's ability to obtain stock at a discount to the market price and resell it on the open market provided UNION with an opportunity to earn such a return. Any failure by VAPE to honor Conversion Notices, therefore, deprives UNION of the essential benefit for which it negotiated, and for which it purchased, the Note.

22. After acquiring the Note, on or about February 11, 2016 UNION duly submitted a Notice of Conversion (the February 11, 2016 Notice of Conversion") to convert $7,000 of the balance of the Note and $283.84 in interest into 5,232,644 shares of VAPE Common Stock, leaving a principal balance of $68,000.00, plus interest accruing thereupon, on the Note along with the requisite opinion letter from counsel. The February 11, 2015 Notice of Conversion is attached hereto as Exhibit D.

23. On or about February 17, 2016, VAPE's legal counsel sent a proposal letter ("Proposal") to its note holders, seeking to augment the terms of its securitized notes. Among other things, VAPE purported to reject Union's Notice of Conversion, claiming that the Note was

"illegal" and void" and a "toxic debt" and stating that it would not honor the Notice of Conversion, VAPE's February 17, 2016 Proposal is attached hereto as Exhibit E.

24.     Worse still, on or about February 19, 2016 VAPE s attorney, Chris Tinen, Esq. – the very same attorney that had negotiated the SPA and Note on Vape's behalf—sent a letter to the transfer agent, claiming that the Note that he himself had negotiated was "illegal" and that the conversion could not be enforced.  A copy of Mr. Tinen's letter to the transfer agent is annexed as Exhibit F.

25.     Among other things, Mr. Tinen quoted several securities laws and vaguely claimed, without any support or legal basis, that plaintiff has violated the securities laws.  Mr. Tinen went on to claim that plaintiff was engaged in "illegal short selling" was "attempting to gain control of the company" and were "crashing the share price" of the company.

26.      In fact, these accusations are false as is evidenced by the plain fact that Mr. Tinen himself had negotiated the transaction, and, upon information and belief continues to negotiate convertible note transactions substantially similar to the transaction at hand on behalf of VAPE.

27.     Additionally, on March 8, 2016, UNION duly submitted a Notice of Conversion (the "March 8, 2016 Notice of Conversion") to convert $20,500.00 of the balance of the Note and $948.05 in interest into 16,077,999 shares of VAPE Common Stock, leaving a principal balance of $47.500.00, plus interest accruing thereupon, on the Note along with the requisite opinion letter from counsel.  The March 8, 2016 Notice of Conversion and opinion of counsel is attached hereto as Exhibit H.

28.     Based on the foregoing events, VAPE's failure to honor UNION's Notices of Conversion has given rise to one or more "Event of Default" pursuant to the terms the Note. In addition thereto, VAPE's subsequent conduct has caused multiple "Events of Default" to occur.

29. With regard to the Notices of Conversion, VAPE defaulted under §8(k) of the Note, which states that an "Event of Default" shall occur if "the Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion." Ex. A at 5.

30. VAPE did not deliver the shares within three (3) business days VAPE's receipt of each Notice of Conversion. Ex. A at 5.

31. Second, by failing to facilitate each of UNION's Notices of Conversion, VAPE rendered itself in default of §8(b) of the Note. Ex. A at 4. Section 8(b) provides that an "Event of Default" shall occur if, "[a]ny of the representations or warranties made by the Company herein or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Company in connection with the execution and delivery of this Note, or the Securities Purchase Agreement under which this note was issued shall be false or misleading in any respect." Ex. A. at 4.

32. Under §4 of the Note, VAPE agreed that the Holder, UNION, would be entitled to convert all or any amount of the principal face amount of the Note then outstanding into shares of the Company's Common Stock *at its option*. Ex. A at 5. By neglecting to effectuate UNION's conversion, VAPE has provided to UNION an irrevocable option to convert any or all of the remaining principal value of the Note.

33. Third, §8(c) of the Note provides that VAPE is in default if "The Company shall fail to perform or observe in any respect any covenant term provision condition agreement or obligation under this Note".

34. Fourth, VAPE is in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if: "[t]he Company shall…(2) admit in writing its inability to pay its debts generally as they mature..."

35. On or about February 22, 2016 VAPE filed its 10-Q, which, states that "the ongoing need to obtain financing to fund operations also raise substantial doubt about the ability of Vape to continue as a going concern raise substantial doubt about the ability of Vape to continue as a going concern".

36. In that same 10-Q, VAPE provided financial statements admitting that it has an accumulated deficit of $27,737,762, that its debts far exceeded its assets, and provided financial information which effectively admit that it is unable to pay its debts as they mature.

37. Fifth, VAPE is in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if:" The Company shall have defaulted on or breached any term of any other note of similar debt instrument into which the Company has entered and failed to cure such default within the appropriate grace period".

38. On or about February 24, 2016, VAPE's former transfer agent, Island Stock Transfer, resigned as transfer agent for VAPE, citing among other things, VAPE's misconduct and refusal to honor conversion notices sent in as part of convertible notes held by unrelated third parties.

39. As a result of its failure to honor the note or similar debt instruments held by one one or more third party, VAPE is in default under §8(d) of the Note.

40. At no point has UNION ever, whether formally or informally, in writing or orally, waived VAPE's defaults.

8

41. Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default. Among other things, plaintiff is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.

42. Additionally §8 mandates that, "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law."

43. Moreover, VAPE's breaches trigger default payments of "$250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the Company." Beginning on the 10th day that the shares are not issued, this payment, "shall increase to $500 per day." Ex. A. at 5.

44. Due to VAPE's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

45. The default payments under the Note were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a breach. First, stocks such as VAPE's are volatile, making the timing of conversion and sale of the stock on the open market important. Second, the ability to convert at a discount and sell on the open market, particularly in an upswing in the stock price, afforded UNION with an opportunity to make profits well beyond the daily default payments.

46. The Note provides that "the Company hereby expressly waives demand and presentment for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate."

47. UNION has been, and continues to be, irreparably harmed by VAPE's failure to honor the Notice of Conversion.

48. Damages from VAPE's failure to deliver the shares are inherently uncertain and difficult to calculate. Since the parties entered in the Note in August of 2015, VAPE's Stock price has ranged from 37 cents on August 10, 2015 per share to just .0019 on February 16, 2016 per share. Thus, the timing of conversions and sale of stock would be essential to the determination of damages. Because it is impossible to discern with any accuracy precisely when UNION would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is impossible. VAPE's stock chart is attached hereto as Exhibit G.

49. Moreover, as set forth in its 10-Q, VAPE is likely insolvent and unlikely to be able to pay any judgment.

50. §5(l) of the Note, annexed as Exhibit A, provides:

> Buyer shall be entitled…to an injunction or injunctions, restraining preventing, or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required

51. As such, without injunctive relief, VAPE is unlikely to satisfy any monetary judgment and UNION will suffer irreparable harm

52. Additionally, based upon VAPE's numerous events of default, plaintiff is entitled to accelerate the entire balance due under the Note.

53. Accordingly, the Note is accelerated and the entire balance of the Note is due.

54. Plaintiff has therefore elected to convert the entire balance of the Note into stock in the maximum amount permitted by law and by the agreement of the parties, which at this time, is 9.9% of all outstanding shares, with the balance, plus applicable liquidated damages and interest, due in cash.

55. All notices and prerequisites to bringing this action, if any, have been complied with or were waived.

## FIRST CLAIM FOR RELIEF
## (SPECIFIC PERFORMANCE)

56. UNION realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

57. Pursuant to the agreements between them, Defendant is obligated to deliver 5,232,644 shares of its Common Stock pursuant to the February 11, 2016 Notice of Conversion and 16,077,999 shares of its Common Stock pursuant to the March 8, 2016 Notice of Conversion, along with the necessary resolutions and acceptance of the legal opinions furnished by UNION, sufficient to enable UNION to sell the shares publicly without restriction.

58. Despite its obligation to do so, Defendants have failed and refused to deliver said shares of stock to UNION.

59. Union is also entitled to convert the Note into shares consisting of up until 9.9% of all outstanding shares of VAPE common stock and to receive the balance of the Note in cash.

60. VAPE has affirmatively stated that it will not honor future conversion notices, thereby repudiating the relevant agreements, including the Note, SPA, and letter to transfer agent executed in connection with the underlying transaction.

61. As a result of such refusal by Defendants, UNION has suffered damages.

62. UNION has no adequate remedy at law.

63. In the absence of injunctive relief and specific performance, UNION will suffer irreparable harm.

64. UNION requests, therefore, that the Court enter an order requiring Defendant to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to UNION 5,232,644 shares of its Common Stock pursuant to pursuant to the February 11, 2016 Notice of Conversion and 16,077,999 shares of its Common Stock pursuant to the March 8, 2016 Notice of Conversion, to convert the remainder of the Note into shares consisting of up until 9.9% of all outstanding shares of VAPE common stock and to receive the balance of the Note in cash as provided for in the Note, and to honor future conversion notices, along with the necessary resolutions and acceptance of the legal opinions furnished by UNION, sufficient to enable UNION to sell the shares publicly without restriction.

### SECOND CLAIM FOR RELIEF
### (<u>BREACH OF CONTRACT</u>)

65. UNION realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

66. Each of the agreements entered into by plaintiff and defendant, including the Note and SPA, are valid and binding agreements.

67. As set forth more fully above, VAPE breached the agreements.

68. VAPE's numerous breaches of the agreement include, but are not limited to:

(i) failing to honor the February 11, 2016 Notice of Conversion and March 8, 2016 Notice of Conversion

(ii) unequivocally stating that they would not honor future conversion notices

(iii) its statements in its 10-Q and other public filings admitting its inability to its debts as they come due

(iv) its failure to honor of the terms, conditions, and warranties of the SPA and Note;

(v)     its default under the terms of similar notes, agreements, or debt instruments.

69.     VAPE's conduct constitutes a breach and anticipatory breach of, and default under, the terms of the Note, SPA and related agreements.

70.     Plaintiff has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

71.     VAPE's breach and default are governed by New York law under the terms of the Note.

72.     Union is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $75,000.00, including without limitation the balance of any portion of the Note that ultimately is not converted into shares, along with interest, and damages as provided for in the Note and by law.

### THIRD CLAIM FOR RELIEF
### (<u>CONVERSION</u>)

73.     UNION realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

74.     UNION has a right to possession of the shares that VAPE has refused to deliver which right is superior to VAPE's right to possess those shares.

75.     VAPE has wrongfully asserted dominion over the shares.

76.     Despite due demand, UNION has refused to turn the shares over to UNION.

77.     VAPE has wrongfully interfered with UNION's right to possess those shares which interference constituted conversion of those shares by VAPE.

78. As a result of VAPE's wrongful conversion of the shares, UNION has been damaged.

79. UNION, therefore, is entitled to an award of damages in an amount to be determined at trial, but in any event in excess of seventy-five thousand dollars ($75,000).

## FOURTH CLAIM FOR RELIEF
## (<u>PERMANENT INJUNCTION</u>)

80. UNION realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

81. §5(l) of the Note provides:

> Buyer shall be entitled…to an injunction or injunctions, restraining preventing, or curing any breech of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required

82. Pursuant to its obligations under the relevant agreements, VAPE is obligated to deliver shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by UNION, sufficient to enable UNION to sell the shares publicly without restriction.

83. Despite its obligation to do so, VAPE has failed and refused to deliver said shares of stock to UNION as required by each of the Notices of Conversion and has further indicated that it will not honor future conversion notices

84. As a result of such refusal by VAPE, UNION has suffered damages.

85. UNION has no adequate remedy at law.

86. In the absence of injunctive relief, UNION will suffer irreparable harm.

87. Additionally, VAPE consented to an injunction when entering into the Note.

88. UNION requests, therefore, that the Court enter an order enjoining and requiring VAPE to deliver the shares of stock as called for in the relevant agreements in response to the each Notice of Conversion that was sent and to honor future conversion notices.

## FIFTH CLAIM FOR RELIEF
### (COSTS, EXPENSES & ATTORNEYS FEES)

89. UNION realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

90. In accordance with the agreements between the parties, VAPE agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by UNION in collecting any amount under the Note or breach of the Agreements.

91. First, §7 of the Note states, "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note."

92. Next, §8 of the Note states, "[i]f the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging and attorney, then, if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding."

93. Therefore, UNION is entitled to an award against VAPE for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff UNION seeks judgment against Defendants as follows:

  i.  On the First Claim for Relief, UNION requests that the Court enter an Order requiring Defendant to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to UNION 5,232,644 shares of its Common Stock pursuant to pursuant to the February 11, 2016 Notice of Conversion and 16,077,999 shares of its Common Stock pursuant to the March 8, 2016 Notice of Conversion, to convert the remainder of the Note into shares consisting of up until 9.9% of all outstanding shares of VAPE common stock and to receive the balance of the Note in cash, and to honor future conversion notices, along with the necessary resolutions and acceptance of the legal opinions furnished by UNION, sufficient to enable UNION to sell the shares publicly without restriction.

  ii.  On all Second and Third Claims for Relief, for damages in an amount to be determined, but in any event in excess of seventy-five thousand dollars ($75,000); and

  iii.  On the Fourth Claim for Relief, the issuance of an injunction enjoining and requiring Defendant to deliver the shares of stock as called for in the relevant agreements in response to each Notice of Conversion that was sent and to honor future conversion notices; and

  iv.  On the Fifth Claim for Relief for an award of UNION's costs and expenses in prosecuting this action, including reasonable legal fees;

  v.  On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

  vi.  For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: March 15, 2016
     New York, New York

                              LAW OFFICE OF JEFFREY FLEISCHMANN PC
                              By: /s/Jeffrey Fleischmann
                            Jeffrey Fleischmann, Esq. (JF-3172)

                          *Attorneys for Plaintiffs*

                          65 Broadway, Suite 842
                          New York, N.Y. 10006
                          Tel. (646) 657-9623
                          Fax (646) 351-0694
                          jf@lawjf.com