UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNION CAPITAL LLC, a New York Limited Liability      :     Case No.: 16-cv-1343-RJS
Company,                                             :
                                                     :
                Plaintiff,                           :
                                                     :
        - against -                                  :
                                                     :
VAPE HOLDINGS INC., a Delaware Corporation           :
                                                     :
                Defendant.                           :
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
IT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: April 27, 2016
      New York, New York

                                        LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                        By: /s/Jeffrey Fleischmann
                                        Jeffrey Fleischmann, Esq. (JF-3172)

                                        *Attorneys for Union Capital LLC*
                                        65 Broadway, Suite 852
                                        New York, N.Y. 10004
                                        Tel. (646) 657-9623
                                        Fax (646) 351-0694
                                        jf@lawjf.com

**PRELIMINARY STATEMENT**……………………………………………..………...….1-2

**STATEMENT OF FACTS**……………………………………………………..………..2-9

**ARGUMENT**

**LEGAL STANDARD**…………………………………………………………………..9-15

    A. The Court Should Grant Summary Judgment On The Second Cause Of Action In The Complaint For Breach Of Contract In Accordance With The Formula Provided In the Note Based Upon the Failure to Honor the Two Conversion Notices…………………………………………………………………......…..10-11

    B. The Court Should Award Specific Performance And Direct Vape To Deliver The Remaining Shares To Union From The Share Reserve As Requested In The First Cause Of Action In The Complaint…………………………………….....…..11-14

    C. The Court Should Award Union Default Interest For The Balance Of The Note......................................................................................................................14

    D. The Court Should Award Summary Judgment On The Fifth Cause of Action And Award Union It's Costs And Attorney's Fees Pursuant To The Agreements………………………………………………………………….……15

**CONCLUSION**……………………………………………………………………………16

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................................. 9
*Castle Creek Tech. Partners v. Cellpoint, Inc.*, 2002 U.S. Dist. LEXIS 23760, 2002 WL 31958696 (S.D.N.Y. Dec. 6, 2002) ...................................................................................... 13
*Goddard v. Gladstone*, 4 Misc.2d 227, 137 N.Y.S.2d 393, 395-96 (N.Y.Sup.Ct.1955) ............. 13
*Goldstein v Held*, 37 AD3d 657, 658 [2d Dept 2007] ............................................................. 12
*Halifax Fund, L.P. v. Response U.S.A., Inc.*, 1977 WL 33173241 (Del. Ch. May 13, 1997) ...... 13
*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996). ......................................................... 10
*JMD Holding Corp. v. Cong. Fin. Corp.*, 795 N.Y.S.2d 502 ..................................................... 11
*La Mirada Products Co., Inc. v Wassall PLC*, 823 F Supp 138, 141 (SDNY 1993) .................. 13
*Laurus Master Fund, Ltd. v Versacom Intern., Inc.*, 02CIV. 5340(LTS)(MHD), 2003 WL 21219791, at *4 [SDNY May 21, 2003] ............................................................................... 11
*Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*, 02CIV.5340(LTS)(MHD), 2003 WL 21219791 (S.D.N.Y. May 21, 2003) ..................................................................................... 13
*Retirement Accounts, Inc. v Pacst Realty, LLC*, 49 AD3d 846, 847 (2d Dept 2008) .................. 14
*Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F.Supp. 1087, 1104 (S.D.N.Y.1989). ..... 11

**Statutes**

Fed. R. Civ. P. 56(a) ............................................................................................................. 9

Plaintiff Union Capital, LLC ("Plaintiff" or "Union"), respectfully submits this memorandum of law support of its motion, under Fed. R. Civ. P. Rule 56 granting partial summary judgment on the claims set forth in the amended complaint against Vape Holdings Inc. ("VAPE").

## **PRELIMINARY STATEMENT**

This is an action for specific performance, breach of contract, and related relief arising as the result of defendants' admitted breach of a securities purchase agreement ("SPA") and convertible note agreement (the "Note", together with the SPA, the "Agreements"), each dated August 5, 2015. It is undisputed that Vape executed the Note and SPA, borrowed the sum of $75,000, and then defaulted on the Note by failing to honor certain Notices of Conversion sent by Union seeking to convert the Note into shares of common stock. In fact, at the Preliminary Injunction hearing, Vape freely admitted to the default. In connection with the preliminary injunction application, the Court issued an Order, dated March 8, 2016 noting: "Plaintiff's very high likelihood of success on the merits". See Docket Entry No. 18 at *8.

As a matter of law, Union is entitled to monetary damages in accordance with a formula specified under in the Note under a breach of contract theory, based upon VAPE's admitted breach of the SPA and Note by virtue of its refusal to honor the two notices of conversion. However, aside from the defined contract damages plaintiff is entitled to because of the failure to honor the two notices of conversion, plaintiff is also entitled to specific performance on additional shares it could have converted but for VAPE's repudiation of the Note and SPA. The two notices of conversion that were sent are less than 9.9 percent of all outstanding VAPE shares, which is the maximum amount of shares that may be converted under the Note. Because VAPE repudiated the Note and SPA, and conclusively stated that it would not honor future conversion notices, it should also be required to deliver 9.9 percent of all outstanding shares of VAPE less the shares demanded as part

of the two conversion notices that were sent (the "Remaining Shares"). Specific performance requiring delivery of the Remaining Shares is appropriate as it would be impossible to determine damages for the failure to deliver the Remaining Shares. There is no way to determine with any precision when, or at what price, Union would have converted the Remaining Shares but for VAPE's repudiation. Finally, under the terms of the relevant agreements, Union is entitled to recover the balance of funds owed under the Note, default interest, and its attorney's fees incurred in enforcing the agreements.

## STATEMENT OF FACTS

The facts of this matter have been fully set forth in the Statement of Material Facts ("SMF") Amended Complaint, as well as the declaration of Chaim A. Vail ("Vail Decl.") annexed hereto and are summarized herein for the convenience of the Court. The amended complaint is annexed hereto as Exhibit K.

### The Agreements

On or about August 5, 2015, after arm's-length negotiations, VAPE executed a Securities Purchase Agreement and Convertible Redeemable Promissory Note to Union (the "Note") in the amount of $75,000. A true and correct copy of the Note is attached as Exhibit A to the Vail Declaration. A true and correct copy of the Securities Purchase Agreement ("SPA") is annexed as Exhibit B to the Vail Declaration. In connection with the negotiation of the various agreements, VAPE was represented by sophisticated counsel, including an individual by the name of Chris Tinen, Esq. Vail Dec. ¶4, Ex. F, p. 6-8

The Agreements were acknowledged by VAPE in its public filings with the SEC, including p. 18 and 23 of its 10-q, filed on February 22, 2016. Vail Dec. ¶5, Exhibit I p. 18 and 23.

VAPE explicitly acknowledged its obligation to convert the Note into shares, stating as follows:

Specifically, VAPE states:

> In connection with the Third Party Debt Conversions, each of the Company's convertible noteholders is entitled to a "share reserve" per their agreements with the Company which entitle them to reserve a certain allotment of common stock out of the authorized but unissued common stock of the Company for future conversions of their notes. The Company is further obligated under the agreements to increase the Company's authorized share count to accommodate for a sufficient amount of share reserves. Vail Dec. ¶6, Ex. I, p. 23

The Note provides that UNION, at any time after execution, has the right to convert all or part of the Note into shares of VAPE common stock (the "Common Stock"). Specifically, §4(a) of the Note provides in pertinent part:

> The Holder of this Note is entitled, at its option, at any time, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") …

Ex. A at 2, paragraph 4(a).

In order to convert the Note, UNION was required to submit a Notice of Conversion to VAPE. Accordingly, §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as <u>Exhibit A</u>.

The only limit on the conversions are that the conversions under the Note may not exceed 9.9% of the outstanding VAPE shares. Ex. A at 2, paragraph 4(a).

As §4(a) of the Note dictates, the price at which each respective Note was convertible (the "Conversion Price") was to be determined "for each share of Common Stock to be equal to 58% of the **lowest trading price** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded . . . for the *thirteen* prior trading days including the day upon which a Notice of Conversion is received by the Company or its transfer agent…" Further, under §4(a), Notices of Conversion are to be "effectuated by the Company [VAPE] delivering the shares of Common Stock to the Holder within 3 business of receipt by the Company of the Notice of Conversion." In order to ensure that sufficient shares are available for conversion, §12 of the Note provides that "[t]he Company shall issue irrevocable transfer agent instructions reserving 1,605,000 shares of its Common Stock for conversion under this Note (the "Share Reserve")." Further, the Note requires that, "[t]he Company should at all times reserve a minimum of four times the amount of shares required if the Note would be fully converted. The Holder [UNION] may reasonably request increases from time to time to reserve such amounts."

Concurrently with the Note, VAPE issued a letter to its transfer agent ("TA"), , noting that it was, and is:

> Irrevocably authorized and instructed to reserve a sufficient number of shares of common stock ("Common Stock") of the Company (initially, 1,605,000 shares of Common Stock which should be held in reserve for the Investor pursuant to the subject Note as of this date) for issuance upon full conversion of the Note in accordance with the terms thereof. The amount of Common Stock so reserved may be increased from time to time, by written instructions of the Company or the Investor.

> The ability to convert the Note in a timely manner is a material obligation of the Company pursuant to the Note. Your firm is hereby irrevocably authorized and instructed to issue shares of Common Stock of the Company (without any restrictive legend) to the Holder **without any further action or confirmation by the Company**…

VAPE's Letter to the transfer agent is attached as Exhibit C.

4

The Letter to the transfer agent further provides that: "The Company agrees that in the event that the Transfer Agent resigns the Company's transfer agent, the Company shall engage a suitable replacement transfer agent that will agree to serve as transfer agent the Company and be bound by the terms and conditions of the Irrevocable Instructions within five (5) business days…..The Investor is intended to be and are third party beneficiaries hereof and no amendment or modification to the instructions set forth herein may be made without the consent of the investor."

### The Failure to Honor the February 11, 2016 Conversion Notices

After acquiring the Note, on or about February 11, 2016 UNION duly submitted a Notice of Conversion (the February 11, 2016 Notice of Conversion") to convert $7,000 of the balance of the Note and $283.84 in interest into 5,232,644 shares of VAPE Common Stock, leaving a principal balance of $68,000.00, plus interest accruing thereupon, on the Note along with the requisite opinion letter from counsel. See Exhibit D and Vail Dec ¶16.

On or about February 17, 2016, VAPE's legal counsel sent a proposal letter ("Proposal") to its note holders, seeking to augment the terms of its securitized notes.  Among other things, VAPE purported to reject Union's Notice of Conversion, claiming that the Note was "illegal" and void" and a "toxic debt" and stating that it would not honor the Notice of Conversion or any other future notice of conversion.   VAPE's February 17, 2016 Proposal is attached hereto as Exhibit E. Worse still, on or about February 19, 2016 VAPE's attorney, Chris Tinen, Esq. –the very same attorney that had negotiated the SPA and Note on Vape's behalf—sent a letter to the transfer agent, claiming that the Note that he himself had negotiated was "illegal" and that the conversion could not be enforced.   A copy of Mr. Tinen's letter to the transfer agent is annexed as Exhibit F.

5

Among other things, Mr. Tinen quoted several securities laws and vaguely claimed, without any support or legal basis, that plaintiff has violated the securities laws. Mr. Tinen went on to claim that plaintiff was engaged in "illegal short selling" was "attempting to gain control of the company" and were "crashing the share price" of the company. In fact, Mr. Tinen himself had negotiated the transaction, and, upon information and belief continues to negotiate convertible note transactions substantially similar to the transaction at hand on behalf of VAPE.

### The Failure to Honor the March 8, 2016 Conversion Notice

Additionally, on March 8, 2016, UNION duly submitted a Notice of Conversion (the "March 8, 2016 Notice of Conversion") to convert $20,500.00 of the balance of the Note and $948.05 in interest into 16,077,999 shares of VAPE Common Stock, leaving a principal balance of $47.500.00, plus interest accruing thereupon, on the Note along with the requisite opinion letter from counsel. The March 8, 2016 Notice of Conversion and opinion of counsel is attached hereto as Exhibit H and Vail Dec. ¶20. VAPE failed to honor the March 8, 2016 Notice of Conversion as well. See Vail Dec.¶ 20.

The March 8, 2016 Notice of Conversion and the February 11, 2016 Notice of Conversion equal less than 9.9 percent of all outstanding VAPE shares. Vail Dec. ¶31.

### The Defaults Under the Note and SPA

Based on the foregoing events, VAPE's failure to honor UNION's Notices of Conversion has given rise to an "Event of Default" pursuant to the terms the Note. In addition thereto, VAPE's subsequent conduct has caused multiple "Events of Default" to occur.

With regard to the Notices of Conversion, VAPE defaulted under §8(k) of the Note, which states that an "Event of Default" shall occur if "the Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days

6

of its receipt of a Notice of Conversion." Ex. A at 5. VAPE did not deliver the shares within three (3) business days VAPE's receipt of each Notice of Conversion. Ex. A at 5.

Second, by failing to facilitate each of UNION's Notices of Conversion, VAPE rendered itself in default of §8(b) of the Note. Ex. A at 4. Section 8(b) provides that an "Event of Default" shall occur if, "[a]ny of the representations or warranties made by the Company herein or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Company in connection with the execution and delivery of this Note, or the Securities Purchase Agreement under which this note was issued shall be false or misleading in any respect." Ex. A. at 4. Under §4 of the Note, VAPE agreed that the Holder, UNION, would be entitled to convert all or any amount of the principal face amount of the Note then outstanding into shares of the Company's Common Stock *at its option*. Ex. A at 5. By neglecting to effectuate UNION's conversion, VAPE has provided to UNION an irrevocable option to convert any or all of the remaining principal value of the Note.

Third, §8(c) of the Note provides that VAPE is in default if "The Company shall fail to perform or observe in any respect any covenant term provision condition agreement or obligation under this Note".

Fourth, VAPE is in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if: "[t]he Company shall…(2) admit in writing its inability to pay its debts generally as they mature..." On or about February 22, 2016 VAPE filed its 10-Q, which, states that "the ongoing need to obtain financing to fund operations also raise substantial doubt about the ability of Vape to continue as a going concern raise substantial doubt about the ability of Vape to continue as a going concern". In that same 10-Q, VAPE provided financial statements admitting that it has an accumulated deficit of $27,737,762, that its debts far

7

exceeded its assets, and provided financial information which effectively admit that it is unable to pay its debts as they mature.

Fifth, VAPE is in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if:" The Company shall have defaulted on or breached any term of any other note of similar debt instrument into which the Company has entered and failed to cure such default within the appropriate grace period". On or about February 24, 2016, VAPE's former transfer agent, Island Stock Transfer, resigned as transfer agent for VAPE, citing among other things, VAPE's misconduct and refusal to honor conversion notices sent in as part of convertible notes held by unrelated third parties. See Exhibit J. As a result of its failure to honor the note or similar debt instruments held by one or more third party, VAPE is in default under §8(d) of the Note.

Moreover, in its 10-Q filed on February 22, 2016, VAPE acknowledged that it is technical default of some of the convertible notes. Specifically, VAPE states:

> Due to the declining market price of the Company's common stock, the noteholders have reserve claims in excess of the common stock authorized at this time. The Company has determined at this time not to increase the authorized share count and is instead in discussions with its convertible noteholders about a consolidation, restructuring and/or buy-out of their notes to resolve these issues. The position taken by the Company may be considered a technical violation of their agreements with the noteholders but none of the noteholders have called a default under the terms of the notes at this time. The Company's ability to issue common stock other than those presently allocated to noteholders is restricted during this time. *Id*. at 23.

At no point has UNION ever, whether formally or informally, in writing or orally, waived VAPE's defaults. Vail Dec. ¶41.

Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default. Among other things, plaintiff is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.

8

Additionally §8 mandates that, "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law."

Due to VAPE's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

The Note provides for the measure of damages that Union is entitled to for failure to honor the two conversion notices. Specifically, §8 provides:

> Make-Whole for Failure to Deliver Loss. At the Holders election, if the Company fails for any reason to deliver to the Holder the conversion shares by the 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the company written notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows:
> Failure to Deliver Loss = [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)]

The Note provides that "the Company hereby expressly waives demand and presentment for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate."

## ARGUMENT

## LEGAL STANDARD

Under the standards of this Court, on a motion for summary judgment the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(a). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. As the Supreme Court has held, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

9

**A. The Court Should Grant Summary Judgment On The Second Cause Of Action In The Complaint For Breach Of Contract In Accordance With The Formula Provided In the Note Based Upon the Failure to Honor the Two Conversion Notices**

In order to succeed on a breach of contract claim under New York law, a plaintiff must demonstrate: (1) the existence of a valid agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996). All the elements are met here. Plaintiff has performed its obligations under the SPA and Note by lending the sum of $75,000.00 and VAPE failed to honor the conversion requests among other breaches.

As a matter of law, Union is entitled to monetary damages in accordance with a formula specified under in the Note under a breach of contract theory, based upon VAPE's admitted breach of the SPA and Note by virtue of its refusal to honor the two notices of conversion. The Note §8 provides:

> Make-Whole for Failure to Deliver Loss. At the Holders election, if the Company fails for any reason to deliver to the Holder the conversion shares by the 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the company written notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows:
> Failure to Deliver Loss = [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)]

VAPE was required to deliver a total of 21,310,643 shares in accordance with the two conversion notices. (5,232,644 shares pursuant to the February 11, 2016 Notice of Conversion and 16,077,999 shares pursuant to the March 8, 2016 Notice of Conversion for a total of 21,310,643.) Additionally, in accordance with the formula provided for in the Note, the high price on March 29, 2016 (a date after the two conversion notices) was 1.7 cents. See Exhibit L for a copy of the VAPE

10

stock chart as of March 29, 2016.  Accordingly, plaintiff is entitled to damages as follows: March 29th high of .017 x 21,310,643 shares = $362,280.93.

This calculation is appropriate as it is a reasonable estimate of the damages that plaintiff sustained as a result of the breach.  *See JMD Holding Corp. v. Cong. Fin. Corp.*, 795 N.Y.S.2d 502 ( "[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss"); *Laurus Master Fund, Ltd. v Versacom Intern., Inc.*, 02CIV. 5340(LTS)(MHD), 2003 WL 21219791, at *4 [SDNY May 21, 2003] ("Under New York law, a party awarded specific performance is also entitled to recover damages for losses resulting from the breaching party's refusal to convey property in accordance with terms of the contract.")

Union should therefore be awarded damages of $362,280.93 for VAPE's failure to honor the two conversion notices.

**B. The Court Should Award Specific Performance And Direct Vape To Deliver The Remaining Shares To Union From The Share Reserve As Requested In The First Cause Of Action In The Complaint**

The test for specific performance requires proof that (1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement. *See Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F.Supp. 1087, 1104 (S.D.N.Y.1989).

That test is easily met here.  There is no dispute that a valid agreement exists, that Union substantially performed its part of the agreements by lending the sum of $75,000.00 and properly sending the Notices of Conversion, and that the parties are able to perform the balance of the agreements by VAPE delivering the shares of stock—which are currently required to be held in reserve for Union's benefit.

The two notices of conversion that were sent are less than 9.9 percent of all outstanding VAPE shares, which is the maximum amount of shares that may be converted under the Note. Because VAPE repudiated the Note and SPA, and conclusively stated that it would not honor future conversion notices, it should also be required to deliver shares to plaintiff consisting of shares equal to 9.9 percent of all outstanding shares of VAPE less the shares demanded as part of the two conversion notices that were sent (the "Remaining Shares"[1]).

Specific performance requiring delivery of the Remaining Shares is appropriate as it would be impossible to determine damages for the failure to deliver the Remaining Shares. It is impossible to determine with any precision when, or at what price, Union would have converted the Remaining Shares but for VAPE's repudiation. Since the parties entered in the Note in August of 2015, VAPE's Stock price has ranged from 37 cents on August 10, 2015 per share to just .0019 on February 16, 2016 per share. See Exhibit G. Thus, the timing of conversions and sale of stock would be essential to the determination of damages. Because it is difficult to discern with any accuracy precisely when UNION would have converted or sold the converted shares, an order directing specific performance is appropriate *See Goldstein v Held*, 37 AD3d 657, 658 [2d Dept 2007] (Directing specific performance as: "Here, there was sufficient evidence demonstrating that the defendant entered into a contract for the sale of real property, that she repudiated the contract in a manner constituting an anticipatory breach")

---

[1] Plaintiff cannot precisely determine this number given that the number of outstanding shares is in constant flux and the 9.9% limit varies with the number of shares issued. Accordingly, it requests that the Court issue a Judgment directed VAPE to deliver 9.9 % of all outstanding shares as of the date of Judgment less the shares demanded as part of the two previously sent conversion notices.

Accordingly, VAPE should be directed to deliver a Remaining Shares which it is required to be held irrevocably in reserve for Union's benefit. *See e.g. Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*, 02CIV.5340(LTS)(MHD), 2003 WL 21219791 (S.D.N.Y. May 21, 2003)(granting specific performance requiring debtor to specifically perform stock delivery pursuant to a convertible note that provided that plaintiff had the right to convert the principal and interest of 8% into Versacom common stock at the lower of $0.23/share or 80% of the average of the three lowest market prices for the 30 trading days prior to the conversion); *Castle Creek Tech. Partners v. Cellpoint, Inc.*, 2002 U.S. Dist. LEXIS 23760, 2002 WL 31958696 (S.D.N.Y. Dec. 6, 2002) (granting injunction to enforce a provision in convertible notes that allowed the notes to be converted for shares of the defendant's common stock); *Goddard v. Gladstone*, 4 Misc.2d 227, 137 N.Y.S.2d 393, 395-96 (N.Y.Sup.Ct.1955) (citing treatise: "specific performance is ... frequently decreed where the contract involved corporate stock of a peculiar or special value to the complainant, or where the subject of the contract is of unknown and of not easily ascertainable value"); *La Mirada Products Co., Inc. v Wassall PLC*, 823 F Supp 138, 141 (SDNY 1993)("When a court cannot arrive at a legal measure of damages with a sufficient degree of certainty, no adequate remedy at law exists and specific performance may be granted."); *Halifax Fund, L.P. v. Response U.S.A., Inc.*, 1977 WL 33173241 (Del. Ch. May 13, 1997)("There is no case – the defendant has not been able to cite any case, and the court is aware of none – that has the effect of precluding this Court from granting specific performance to remedy a clear case of a violation of a contract right to convert preferred stock into common stock… In that connection, the Court rejects the defendant's argument that plaintiff has an adequate remedy at law, namely damages. In this case, only coercive relief will vindicate the rights being enforced…")

Summary judgment on the first cause of action for specific performance of the Remaining Shares is therefore an appropriate remedy.

### C. The Court Should Award Union Default Interest For The Balance Of The Note

§8 of the Note mandates that, "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." Given that the first Notice of Conversion was sent on February 11, 2016, and VAPE defaulted under §8(k) of the Note, which states that an "Event of Default" shall occur if "the Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion" default interest at the rate of 24% should be awarded as of February 14, 2016 (which is three days after the Notice of Conversion and the latest date by which VAPE must deliver the shares under the terms of the Note).

Accordingly, plaintiff is entitled to 24% default interest on the amounts owed pursuant to the formula for failure to honor the two conversion notices and on the balance of the Note less any of the Remaining Shares delivered pursuant to an order of specific performance[2]. *See Retirement Accounts, Inc. v Pacst Realty, LLC*, 49 AD3d 846, 847 (2d Dept 2008) ("as the Supreme Court correctly concluded, the mortgage note and agreement clearly, unambiguously, and unequivocally expressed that, in the event of default, the agreed-upon rate of interest, 24%, was to govern over the statutory rate of interest from that time through the entry of judgment up until actual satisfaction")

---

[2] Plaintiff cannot precisely determine this number given that it does not know precise number of Remaining Shares to which it is entitled as the result of the constantly changing number of VAPE shares. However, even had the two conversion notices been honored, there would remain a principal balance of $47.500.00. See Exhibit H.

14

### D. The Court Should Award Summary Judgment On The Fifth Cause of Action And Award Union It's Costs And Attorney's Fees Pursuant To The Agreements

In accordance with the agreements between the parties, VAPE agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by UNION in collecting any amount under the Note or breach of the Agreements. First, §7 of the Note states, "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note." Next, §8 of the Note states, "[i]f the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging and attorney, then, if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding."

Therefore, UNION is entitled to an award against VAPE for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

Because the full extent of legal fees and costs are not known at this time given the fact that this action is ongoing, Union respectfully requests that the court set this issue down for a hearing at a later date, or permit supplemental submissions after this matter is concluded.

## CONCLUSION

For the foregoing reasons, the Union respectfully requests that the Court award the relief requested.


Dated: April 27, 2016
         New York, New York

                                    LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                    By: /s/Jeffrey Fleischmann
                                    Jeffrey Fleischmann, Esq. (JF-3172)

                                    *Attorneys for Union Capital LLC*
                                    65 Broadway, Suite 852
                                    New York, N.Y. 10004
                                    Tel. (646) 657-9623
                                    Fax (646) 351-0694
                                    jf@lawjf.com