UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNION CAPITAL LLC,

                    Plaintiff,

        -against-

VAPE HOLDINGS INC.,

                  Defendant.

Civil Action No. 1:16-cv-1343
(RJS)

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR SUMMARY JUDGMENT

**PRESS LAW FIRM PLLC**
144 East 44th Street, Eighth Floor
New York, NY  10174
Telephone:  (212) 922-1111
Facsimile:   (347) 342-3882
mpress@presslawfirm.com

## TABLE OF CONTENTS

**Page**:

I.  Introduction ........................................................................................................1

II.  Statement of Facts ..............................................................................................2

    A.  The Union Toxic Convertible Note ..........................................................3

    B.  The Upfront Fees .....................................................................................4

    C.  The Prepayment Penalty ..........................................................................5

    D.  The Damages Penalty Provision ..............................................................5

    E.  The Default Penalty Provisions ...............................................................6

    F.  Union's Proposed Debt Consolidation .....................................................6

    G.  The First Notice of Conversion ...............................................................7

    H.  Union's Unsuccessful Motion for a Preliminary Injunction ....................7

    I.  The Second Notice of Conversion ...........................................................8

    J.  Union's First Amended Complaint ...........................................................9

    K.  VHI Seeks Discovery in Support of its Usury Defense and Other Defenses ..........9

**III.  Argument** ..........................................................................................................11

    A.  Union's Motion Must Be Denied in its Entirety Because VHI Has Established Issues of Fact Concerning its Usury Defense .......................................................12

    B.  The Damages Penalty Provision is an Unenforceable Penalty .............................16

    C.  Union's Motion for Summary Judgment on First and Fourth Causes of Action for Specific Performance of the Conversions Must Be Denied Because Union Has An Adequate Remedy At Law .......................................................20

    D.  Union is Not Entitled to 24% Default Interest, Because Union Elected for Expectation Damages Based Upon VHI's Refusal to Convert the Note ..............22

    E.  Union Is Not Entitled to Attorneys' Fees ...........................................................23

Conclusion .....................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 24 N.Y.3d 528, 536, 25 N.E.3d 952, 957 (2014) ..................................................................................................... 17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ........................................................ 11

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 2006 WL 1493132, at \*8 (S.D.N.Y. May 31, 2006) ................................................................................................. 20, 21

*Aristocrat Leisure*, 618 F. Supp.2d at 299 (S.D.N.Y. 2009) ....................................................... 21

*Bell v. Ebadat*, 2009 WL 1803835, at \*2 (S.D.N.Y. June 16, 2009) ............................................ 17

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 183, 961 N.Y.S.2d 86, 89 (1st Dep't 2013) .............................................................................................. 12, 13, 15, 16

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 568 (S.D.N.Y. 2003) .. 17, 18

*City of New York v. B & M Ferry Co.*, 238 N.Y. 52, 56, 143 N.E. 788 (1924) ............................ 18

*Durante Bros. & Sons, Inc. v. Flushing Nat. Bank*, 652 F.Supp. 101, 105 (E.D.N.Y.1986) ........ 14

*Erie R. Co. v. City of Buffalo*, 180 N.Y. 192, 73 N.E. 26 (1904) ................................................. 20

*Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 492 (S.D.N.Y. 2015) ... 11

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) .............................. 11

*Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) ........................................................................................................ 12, 13, 16

*In re Gen. Am. Commc'ns Corp.*, 73 B.R. 887, 891 (S.D.N.Y. 1987); ........................................ 12

*In re Rosner*, 48 B.R. 538, 547, 561, (E.D.N.Y.Bankr.1985) ...................................................... 12

*In re United Merchants & Mfrs., Inc.*, 674 F.2d 134, 142 (2d Cir. 1982) .................................... 17

*Laurus Master Fund, Ltd. v. Valcom, Inc.*, 2002 WL 432686, at \*3 (S.D.N.Y. Mar. 19, 2002) .. 21

*Lloyd Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 127, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992). 14

*Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2002) ..................... 18, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) ..................... 11

*Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 293, 301 (S.D.N.Y. 2010) ... 18

*N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 998 F. Supp. 2d 301, 336 (S.D.N.Y. 2014) . 17

*Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) ............................... 18

*Sabella v. Scantek Med., Inc.*, 2009 WL 3233703, at *17-22 (S.D.N.Y. Sept. 25, 2009) ...... 13, 15

*Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir.1990) .............................. 18, 22

*Simon v. Electrospace Corp.*, 28 N.Y.2d 136 (N.Y. 1971) ......................................................... 21

*Simsbury Fund, Inc. v. New St. Louis Assocs.*, 204 A.D.2d 182, 182, 611 N.Y.S.2d 557 (1st

    Dep't 1994) ........................................................................................................................... 12

*Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) ............... 11

*Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018

    (1977) .................................................................................................................................... 17

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) ................... 17

*United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ............................................................. 11

*Van Wagner Adv. Corp. v. S & M Enters.*, 492 N.E.2d 756, 760 (N.Y.1986) ............................. 20

*Vernitron Corp. v. CF 48 Associates*, 104 A.D.2d 409, 409, 478 N.Y.S.2d 933, 934 (2nd Dep't

    1984) ..................................................................................................................................... 18

*Waxman v. Envipco Pickup & Processing Servs.*, 2006 WL 1788964, at *3 (S.D.N.Y. June 28,

    2006) ..................................................................................................................................... 21

**Federal Statutes**

Fed. R. Civ. P. 56(c) ........................................................................................ 11

Fed. R. Civ. P. 56(d) ........................................................................................ 12

**State Statutes**

N.Y. Penal Law § 190.40 (McKinneys 2016) ....................................................... 12

Defendant Vape Holdings Inc. ("VHI") submits this memorandum of law in opposition to the motion of Plaintiff Union Capital LLC for partial summary judgment.[1]

## I.    INTRODUCTION

This action arises from Union's continued attempt to enforce the toxic conversion features of a criminally usurious loan. Having lost its hyper-aggressive bid for preliminary injunctive relief—forcing VHI to issue massive numbers of shares, and commencing a "death spiral" in VHI's publicly traded shares—Union now boldly asks the Court to impose damages in excess of **500%** of Union's appropriate expectation damages if the Note were enforceable, which it is not.

Union's motion should be denied because VHI has, at a minimum, presented genuine issues of fact concerning whether the Note is usurious—and, thus, unenforceable. Union proudly boasts that it entered into the loan with VHI in order to obtain a high rate of return. Although the Note masquerades as a mere 8% note, in fact the conversion feature—which forces VHI to sell its publicly traded shares to Union at a 42% discount—constitutes a form of additional interest, which makes the effective interest rate of the Note nearly 200%. In addition, $9,750 in upfront fees that Union deducted from the loan proceeds appear constitute additional interest, further increasing the effective interest rate of the loan to astronomical levels. While VHI submits that it has sufficiently established that the Note is usurious, at a minimum Union's motion should be denied so that VHI may take the discovery necessary to confirm that the Note is wholly unenforceable.

Union's attempt to enforce an outrageous and punitive purported liquidated damages provision in the Note should also be denied. Because, Union's contract damages, if any, are

---

[1] A copy of Union's First Amended Complaint in this matter is attached to the accompanying Declaration of Matthew J. Press ("Press Dec."), as Exhibit 1.

easily ascertainable as of the date of the alleged breach, a liquidated damages provision is not necessary, and this provision would impose damages over 500% greater than any appropriate expectation damages. Union has the temerity to seek ***$362,280.93*** in damages on a $75,000 note. In fact, Union's damages, at best, are *$42,621*—a still usurious 65% of the $62,250 that VHI received net of fees, but only 11% of what Union seeks here.

Union's confusing claim to specific performance of the conversion feature of the Note as to certain "remainder shares," likewise must be denied, because—as the Court has already found—Union has an adequate remedy at law, and Union has not come close to demonstrating that VHI is on the verge of insolvency.

Nor is Union entitled to 24% default interest on the Note, because Union elected to seek its expectation damages for breach of the conversion feature, and thus cannot also seek an interest remedy, which assumes that Union is seeking the return of its capital, plus interest. Finally, Union is not entitled to an award of attorneys' fees, because Union's motion is without merit.

## II.   STATEMENT OF FACTS

In the summer of 2015, VHI required liquidity and was forced to borrow a total of $1,000,000 from a group of eight predatory, "death spiral" lenders, including Union (the "Death Spiral Financing"). *See* Declaration of Chris Tinen ("Tinen Dec.") ¶ 3. The Death Spiral Financing was arranged and negotiated by VHI's financial advisor, Sarah Speno, who had contacts with a number of lenders, including Union, LG Capital Funding LLC ("LG") and Adar Bays, LLC ("Adar"). *See id.* ¶ 4. There were no counsel involved on behalf any party, and the transaction came together in very short order. *See id.* ¶ 5.

Essentially, the lenders dictated the terms of the Death Spiral Financing and presented Securities Purchase Agreements and notes, including Union's Note, for signature with no

modification.  *See id.*  In connection with the Death Spiral Financing, each of LG, Adar and Union charged up front "legal fees" and "due diligence fees," purportedly on account of "Anubis Capital Management."  *See id.* ¶ 6.  These amounts were deducted from the loan proceeds, so that VHI received a net amount, far less than the face amount of the notes.  *See id.*

### A.    The Union Toxic Convertible Note

As part of the Death Spiral Financing, on or about August 5, 2015, VHI entered into a Securities Purchase Agreement ("SPA") and VHI simultaneously issued to Union a $75,000 8% Convertible Redeemable Note, with a maturity date of August 5, 2016.  *See* Press Dec., Exhs. 2 & 3.  The Note provides for what is known as "toxic" conversion rights.  Specifically, the Note states that Plaintiff may convert the outstanding balance of the Note into common stock of VHI, and thus force VHI to issue shares, at a price equal to *58%* of the lowest trading price of the common stock during the preceding thirteen days prior to conversion. *See id.* § 4(a).  Due to the multi-week "lookback," and lowest intra-day trading price as factors on conversion, the Note may provide for conversion into common stock at as little as 50% of the prevailing market price of VHI's common stock.

As Union boasts in its Complaint, it made the loan expressly for the toxic conversion feature.  *See* Exh. 1 ¶ 21. Union states that its "ability to obtain stock at a discount to the market price and resell it on the open market provided Union with an opportunity to earn" a return commensurate with the loan's "exceedingly" high risk.  *See id.*  As set forth below, the at least 42% discount upon the public price of VHI's shares constituted additional interest under the Note, because VHI was forced to "sell" its shares to Union for less than their fair market value.  For example, under the formula in § 4(a) of the Note, if VHI's share price was $1.00, and Union converted the full $75,000 Note, Union would be entitled to receive shares worth $129,310.34, for a *172%* return.  The additional $54,310.34 would constitute additional interest.

### B.    The Upfront Fees

However, the effective interest rate of the Note was even higher. Although the Note had a face amount of $75,000, under the SPA, Union deducted from the loan proceeds a total of $9,750.00 in "fees," including $3,750.00 in purported "legal fees" and $6,000.00 in purported "due diligence fees," s*ee* Exh. 3 at 11, which reduced the net loan funds received by VHI at closing to $65,250.00.   These upfront fees, however, appear to be no more than disguised interest, increasing the effective interest rate of the Note.

VHI's securities counsel, Christopher Tinen, states that he never had contact with *any* lawyer representing Union, and there could have been no other legal services specific to the Note, because Union used form language which it refused to negotiate.  *See* Tinen Dec. ¶ 7. Thus, Union's purported legal fees appear to be merely a ruse.  *See id.*  Likewise, neither VHI nor Mr. Tinen had any contact with "Anubis Capital Management," and nobody acting on behalf of the Death Spiral Lenders conducted any due diligence.  *See id.* ¶ 8.  On the contrary, VHI understands that the principals of Union, LG and Adar applied their own substantial knowledge and experience to make the underwriting decision to participate in the Death Spiral Financing. *See id.*   Accordingly, the upfront amount that Union charged VHI for "due diligence fees" likewise appears to be nothing more than disguised interest, further increasing the effective interest rate of the Note.  *See id.*

Using the net loan funds at closing of $65,250.00 as base, in the above example the $129,310.34 in conversion shares that VHI would be forced to issue to Union represents a ***183%*** return on Union's loan.  Indeed, by virtue of the upfront fees, even if Union did not convert any of the shares, the effective rate of interest still would be well over 25% because, upon a $65,250.00 loan, Union would receive 8% interest, in the amount of $6,000, plus $9,750 in purported fees, plus the time value of the upfront fees of $780—totaling $16,530, or 25.33%.

4

However, pursuant to § 4(b) of the Note, the undisguised portion of the interest, or $6,000, "shall be paid by the Company in Common Stock" . . . "based on the formula provided in Section 4(a) above."   In other words, assuming a share price of $1.00, Union would receive shares worth $10,344.83, for an additional $4,344.83 in interest.   When this further amount is included, it appears that Union receives a total of $20,874.83 in interest upon a net loan of $65,250, for an effective interest rate of *32%*.

### C.      The Prepayment Penalty

Under the Note, VHI was entitled to prepay the loan during the first 180 days of its term. *See* Note § 4(c).  However, if it wished to do so, VHI was required to pay a substantial penalty according to a schedule set forth in § 4(c)—ranging from 118% of principal plus accrued interest in the first month (for an effective rate of at least 216% per annum) to 148% of principal plus accrued interest in the fifth month (for an effective rate of at least 96% per annum).   After the 180th day, pre-payment is no longer an option.   *See id.* § 4(c) ("The Note may not be prepaid after the 180th day.").  These high pre-payment penalties confirm that the effective interest rate of the Note is well over 25%.

### D.      The Damages Penalty Provision

Section 8 of the Note provides that certain events constitute "Events of Default," including non-payment of principal or interest, and failing to deliver stock within three days of receipt of a Notice of Conversion.   *See* Note § 8.   In the case of failure to deliver shared demanded pursuant to a notice of conversion, § 8 provides a calculation of liquidated damages (the "Damages Penalty Provision").   The Damages Penalty Provision states:

> At the Holder's election, if the Company fails for any reason to deliver to the Holder the conversion shares by the by the [*sic*] 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the Company written

> notice indicating the amounts payable to the Holder in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows: *Failure to Deliver Loss = [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)]*

*Id.* § 8 at 6 (emphasis added).

As set forth below, the Damages Penalty Provision is unenforceable because Union's actual damages for such a default are easily calculated, such that there is no need for the Damages Penalty Provision—which, by design, awards Union radically more than its actual expectation damages under New York law. Indeed, in this case, Union purports to seek over 500% more than its actual damages if the Note were an enforceable obligation.

### E.    The Default Penalty Provisions

Section 8 further states that upon and Event of Default, in addition to any other remedies under the Note, interest shall accrue at a default interest rate of 24% ("Default Interest"). *Id.* § 8 at 5. Furthermore, in the event of a failure to honor a notice of conversion, Section 8 states that there shall be a "penalty" for each day of non-delivery (the "Daily Penalty Payments"). *Id.* It states:

> [T]he ***penalty*** shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the Company. This ***penalty*** shall increase to $500 per day beginning on the 10th day.

*Id.* (emphasis added).

### F.    Union's Proposed Debt Consolidation

Aware that the toxic conversion feature of the Note is harmful to the public market in VHI's stock, Union approached VHI about a financing deal to "buy-out" the approximately $1 million of such toxic convertible debt on VHI's books, if the other convertible noteholders would take a 25% discount on their notes. *See* Declaration of Justin Braune ("Braune Dec.") ¶ 3.

Accordingly, far from questioning VHI's ability to survive as a going concern, Union sought to increase its commitment to VHI by a factor of over *13x*.  *See id.*  When Union learned that VHI had rejected its offer, and had identified a new investor that was willing and able to buy out its shares, Union immediately cut off communications with VHI and retaliated. *See* Braune Dec. ¶ 7.

### G.    The First Notice of Conversion

On February 11, 2016, only one day after VHI signed a term sheet with the competing lender, Union submitted a Notice of Conversion (the "First Notice of Conversion") purporting to convert $7,000 of debt into 5,232,644 share of VHI common stock.  *See* Notice of Conversion, Press Dec., Exh. 4.  VHI refused to honor the First Notice of Conversion on grounds that the Note violated New York's usury laws, and that Union intends to manipulate VHI's stock by, among other things, triggering a "death spiral" in the price of VHI's stock.  *See* Braune Dec. ¶ 9.

By email dated February 17, 2016, VHI's counsel stated:

> Please be advised that the Board of Directors of Vape Holdings, Inc. (the "Company") has authorized our firm, as outside legal counsel, to inform you that it rejects Union Capital, LLC's ("Union") Conversion Notice submitted on February 11, 2016. We have informed Island Stock Transfer of this rejection, and the factual and legal reasons for so doing, ***to stop Union's attempted conversion and any future conversions*** for the reasons stated below.

Press Dec., Exh. 5 (emphasis added).  As Union concedes in its brief, by this notice, VHI "repudiated" the conversion feature of the Note.  *See* Pls. Mem. at 1.

### H.    Union's Unsuccessful Motion for a Preliminary Injunction

On February 22, 2016, Union commenced this action and moved *ex parte* for a Temporary Restraining Order ("TRO") and a preliminary injunction. *See* Dkt. No. 4.  On February 24, 2016, the Court denied Union's request for a TRO, on grounds that Union's breach

of contract damages are ascertainable—and, thus, that Union failed to meet its burden of establishing irreparable harm. *See* Press Dec., Exh. 6. Specifically, the Court stated,

> [T]he Court finds that Plaintiff has failed to meet its burden of showing irreparable harm absent the issuance of a TRO pending the preliminary injunction hearing. Specifically, Plaintiff claims that it will suffer irreparable harm because the frequent price fluctuations of the stocks at issue make it "exceedingly difficult to establish with precision" any damages resulting from Defendants' breaches. (Pl. Br. at 5.) However, this difficulty in estimating Plaintiffs damages does not, on its own, "overcome plaintiff's burden to show irreparable harm." *Laurus Master Fund, Ltd. v. Valcom, Inc.,* No. 02-cv-1480 (WK), 2002 WL 432686, at *3 (S.D.N.Y. Mar. 19, 2002). The market price for stocks that are publicly traded, such as Defendant Vape's, "is generally considered to be ascertainable," and Plaintiff has failed to give "any plausible reason why this should not be the case here other than that the stock price fluctuates." *Id.*

Thereafter, on March 8, 2016, after full briefing and argument, the Court denied Union's motion for a preliminary injunction on the same grounds. *See* Press Dec., Exh. 7 at 6 ("For the reasons stated in its order denying Plaintiffs request for a temporary restraining order, the Court rejects Plaintiffs arguments that a finding of irreparable harm is warranted based on the alleged difficulty of calculating damages or on a provision in the SPA conclusorily declaring Plaintiffs harm to be irreparable in the event of breach."). The Court also found, as it indicated during oral argument, that Union failed to establish that VHI somehow is on the verge of insolvency, such that VHI would be unable to satisfy a judgment at the conclusion of the litigation. *See id.* at 7-8.

## I.    The Second Notice of Conversion

On March 8, 2016, following the denial of its motion for a preliminary injunction, Union submitted a second Notice of Conversion (the "Second Notice of Conversion") purporting to convert $20,500.00 of the balance of the Note, and $948.05 in interest, into 16,077,999 shares of VHI's Common Stock. *See* Press Dec., Exh. 8. Union asserted that following the Second Notice of Conversion, there remained a balance of $47,000 due on the Note. *See id.*

**J.      Union's First Amended Complaint**

On March 15, 2016, Union filed its First Amended Complaint.  In its First and Fourth Claims for Relief, Union erroneously persists in seeking specific performance of the toxic conversion features of the Note.  *See* Compl. ¶¶ 56-64 & 80-88.[2]    In its Second Claim for Relief, Union asserts a claim to monetary damages arising from VHI's refusal to honor the conversion notices, *plus* 24% default interest on the Note, *plus* the purported Daily Penalty Payments.  *See id.* ¶§ 42-54 & 72.  Finally, in its Third Claim for Relief, Union mistakenly claims that VHI committed the tort of conversion when it refused to issue shares to Union pursuant to the First and Second Conversion Notices.  *Id.* ¶¶ 73-79.  Plaintiff moved to dismiss Union's First Amended Complaint.

**K.      VHI Seeks Discovery in Support of its Usury Defense and Other Defenses**

On April 8, 2016, VHI issued a Notice of Deposition to Union's principal, Chaim Vail, and VHI's First Request for Production of Documents ("the "Requests"), seeking critical discovery concerning Union's claims, and VHI's defenses, in this action.  *See* Press Dec., Exhs. 9 & 10.  In its Requests, VHI sought a number of categories of documents critical to establishing its usury defense, as well as other defenses, including:

---

[2] Union states that it has now "elected to convert the entire balance of the Note into stock in the maximum amount permitted by law and by the agreement of the parties, which at this time, is 9.9% of all outstanding shares, with the balance, plus applicable liquidated damages and interest, due in cash." *Id.* ¶ 54.

- All documents concerning, referring or relating to the Note.

- All documents concerning, referring or relating to the SPA.

- All documents evidencing Union's payment of legal fees in connection with the Note and/or SPA, as set forth on page 11 of the SPA.

- All documents evidencing Union's payment of due diligence fees to Anubis Capital Partners in connection with the Note and/or SPA, as set forth on page 11 of the SPA.

- Documents sufficient to show the relationship between Union and Anubis Capital Partners.

- All documents concerning, referring or relating to Union's underwriting of the Note.

- All documents concerning, referring or relating to Union's expected rate of return in connection with the Note.

- All documents concerning, referring or relating to Union's business strategy concerning the Note.

*See* Press Dec., Exh. 10, Requests Nos. 1-8.

In a joint letter to the Court, dated April 15, 2016, Union refused to produce *any* discovery to VHI. *See* Press Dec., Exh. 11. Although the Court denied VHI's request for discovery at that time, it stated that: "If the Court concludes after having reviewed the parties' submissions that there are factual issues that cannot be resolved on the face of the pleadings and/or the parties' contracts, the motion for summary judgment will be denied, and at that time, the Court will order discovery to commence." Press Dec., Exh. 12. As set forth below, VHI submits that the need for such discovery on its meritorious usury defense is clear on its face.

### III.    ARGUMENT

Summary judgment is not appropriate where there is a genuine dispute as to material facts.  *See* FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Aaron v. Mattikow,* 146 F. Supp. 2d 263, 265 (E.D.N.Y. 2001) (denying summary judgment where defendant established issue of fact concerning application of usury defense).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In assessing a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions submitted must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

It is fundamental that "[t]he nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505). Only in the *rarest* of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.  *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (denying summary judgment where plaintiff was denied opportunity to take discovery of any sort); *Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 492 (S.D.N.Y. 2015) ("While Federal Rule of Civil Procedure 56 allows a party to move for summary judgment before discovery is complete, such a motion is successful "[o]nly in the rarest of cases" because "[t]he nonmoving party must have had the opportunity to discover information that is essential to [its] opposition to

the motion for summary judgment.").[3]

Here, Union's refusal to produce discovery concerning the purported upfront fees, as well as documents likely to admit the true effective interest rate of the Note, alone justifies the denial of Union's motion.

### A.    Union's Motion Must Be Denied in its Entirety Because VHI Has Established Issues of Fact Concerning its Usury Defense

Union's motion must be denied in its entirety, and this action dismissed, because the Note is criminally usurious.  At a minimum, Union's motion should be stayed until VHI has had an opportunity to take complete discovery concerning this affirmative defense, and other potential defenses.

Under New York Law, a loan is criminally usurious if the lender knowingly makes it at an annual rate of interest of more than 25 percent. *See* N.Y. PENAL LAW § 190.40 (McKinneys 2016); *Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (Hellerstein, J.).[4]  Such a loan is void and unenforceable.  *See Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 183, 961 N.Y.S.2d 86, 89 (1st Dep't 2013) (finding criminally usurious business loan void and unenforceable).  A usury "savings clause," such as that found in the default interest section of the Note, does not render a loan non-usurious.  *See Hillair Capital*, 963 F. Supp. 2d at 339; *Simsbury Fund, Inc. v. New St. Louis Assocs.*, 204 A.D.2d 182, 182, 611 N.Y.S.2d 557 (1st Dep't 1994) ("[L]anguage therein purporting to reduce the interest rate to the legal rate in the event of a finding of usury, do not

---

[3] Thus, Rule 56(d) provides: "When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

[4] The determinative issue is whether there was an intent to charge and receive a rate of interest in excess of 25%. *In re Gen. Am. Commc'ns Corp.*, 73 B.R. 887, 891 (S.D.N.Y. 1987); *In re Rosner*, 48 B.R. 538, 547, 561, (E.D.N.Y.Bankr.1985).

make the subject agreements nonusurious.").

"To determine whether a transaction is usurious, courts look not to its form but to its substance or real character. If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent payment constitutes interest within the meaning of the usury statutes." *Blue Wolf Capital,* 105 A.D.3d at 183, 961 N.Y.S.2d at 89 (finding "commitment fee" and "deposit" constituted interest for purposes of usury analysis). Grants of stock, warrants and conversion rights, as well as certain upfront fees, may constitute disguised interest. *See Hillair Capital*, 963 F. Supp. 2d at 339 (finding value of stock grants should be included in interest rate computation); *Sabella v. Scantek Med., Inc.*, 2009 WL 3233703, at *17-22 (S.D.N.Y. Sept. 25, 2009) (same).

To compute the effective rate of interest, the Court must take the stated amount of interest under the note, and add all forms of disguised interest. *See Blue Wolf Capital*, 105 A.D.3d at 83, 961 N.Y.S.2d at 89. The Court then computes the net amount of the loan funds that the borrower received at closing, less all fees deemed interest. *See id.* Finally, the court "express[es] the interest payments as a percentage of the net loan funds," *id.*, which results in the effective legal rate of interest.

In *Hillair Capital*, Judge Hellerstein denied a lender's motion for summary judgment to enforce two promissory notes, each with a nominal interest rate of 16%, where the borrower raised issues of fact concerning whether certain upfront fees and stock issuances rendered the loan usurious. *See Hillair Capital*, 963 F. Supp. 2d at 339. Specifically, the court found that the borrower raised questions concerning whether (1) two $15,000 assessments, purportedly for reimbursement of the lender's legal fees, deducted from the loan proceeds, and (2) shares of stock issued by the borrower in connection with the loans each constituted disguised interest,

increasing the effective interest rate of the loans.  *See id.*  As to the purported legal fees, the court

stated:

> Defendants first contend that the $15,000 in fees they paid to
> Plaintiff for each loan should be taken into account when
> calculating the interest rate. "[A] borrower may pay reasonable
> expenses attendant on a loan without rendering the loan usurious."
> *Lloyd Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 127, 589 N.Y.S.2d
> 396, 603 N.E.2d 246 (1992). Reasonable expenses can include
> payments for attorneys' fees associated with the loan. *Durante
> Bros. & Sons, Inc. v. Flushing Nat. Bank*, 652 F.Supp. 101, 105
> (E.D.N.Y.1986). *However, when fee payments do not actually
> reimburse lenders for expenses associated with the loan, and
> instead are a disguised loan payment, then such fee expenses can
> be considered in determining the interest rate.*

*Id.* (emphasis added.)   Similarly, concerning the shares of stock the borrower issued to the

lender, the court stated:

> Defendants claim that the interest rates on the loans are higher than
> they appear because the stock transactions helped disguise the true
> value of the loans. *Defendants are correct that the stock payment
> should be taken into consideration in determining the interest rate.*
> Defendants effectively undertook four transactions: they took out
> two loans, and they also twice sold stock to Plaintiff. *The value of
> the sold stock therefore is critical to calculating the initial loan
> amount and thus the interest rate.*

*Id.* (emphasis added.)

Here, the Note states that it is in the amount of $75,000, and bears an interest rate of 8%.

However, as Union boasts, it did not make the loan for mere interest payments.  *See* Compl. ¶ 21.

Rather, Union made the loan expressly for the conversion feature, which alone afforded Union

the triple digit return that it sought for the "exceedingly risky" loan.  *See id.* Under the

conversion feature, Union is entitled to convert the $75,000.00 face amount of the Note into the

publicly traded common stock of VHI at a 42% discount on the lowest trading price of the stock

in the prior thirteen days, and to dump VHI's stock in the market for a guaranteed, locked-in,

profit.  *See* Note § 4(a).

As in *Hillair Capital*, the effective rate of interest of the Note is substantially augmented by the 42% discount on share conversions—which conversions were solely at the discretion of Union.  *See Blue Wolf Capital*, 105 A.D.3d 178, 183, 961 N.Y.S.2d at 89 ("If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent payment constitutes interest within the meaning of the usury statutes.").[5]  For example, under the formula in § 4(a) of the Note, if VHI's share price was $1.00, and Union converted the full $75,000 Note, Union would be entitled to receive shares worth $129,310.34, for a ***172%*** return.  The additional $54,310.34 would constitute additional interest.[6]

However, as demonstrated above, the effective interest rate of the Note was even higher.  Although the Note was in a face amount of $75,000, under the SPA, Union deducted from the loan proceeds a total of $9,750.00 in "fees," including $3,750.00 in purported "legal fees" and $6,000.00 in purported "due diligence fees," s*ee* Exh. 3 at 11, which reduced the net loan funds received by VHI at closing to $65,250.00.  These upfront fees for apparently non-existent legal services and third party due diligence services, however, were no more than disguised interest,

---

[5] Although not issued at the inception of the transaction, the conversions are analogous to the issuances of stock by the borrower in *Hillair Capital*.  *See id.*; *Sabella*, 2009 WL 3233703, at *17-22 (holding that the value of common stock given to the lender should be taken into account when determining the loan's interest rate).

[6] Even at VHI's current penny stock valuation, Union would inevitably achieve an exceptionally high rate of interest.  For example, in its motion, Union asserts that it is entitled to 5,232,644 shares under its February 11, 2016 Notice of Conversion, plus 16,077,999 shares under its March 8, 2016 Notice of Conversion, for a total of 21,310,643 shares.  *See* Pls. Mem. at 10.  At yesterday's closing price of exactly $0.004 per share, Union could convert and immediately dump these shares for a profit of at least $85,242.57, or for an effective interest rate of at least 136% (or 272% per annum).  At higher share prices, Union would earn even more, and enjoy an even higher effective rate of interest—all without taking any market risk on business and operations of VHI.

increasing the effective interest rate of the Note.  *See* Tinen Dec. ¶¶ 7-8.[7]

Using the net loan funds at closing of $65,250.00 as base, in the above example the $129,310.34 in conversion shares that VHI would be forced to issue to Union would represent a *183%* return on Union's loan.  However, as set forth above, by virtue of the upfront fees, and the obligation to convert interest into shares under § 4(b) of the Note, even if Union did not convert any of the underlying debt to shares, the Note still would be usurious because, upon a $65,250.00 loan, the effective interest rate would be *32%*.[8]

VHI submits that the Note is usurious on its face, and the Court should search the record and grant summary judgment in VHI's favor.  *See Blue Wolf Capital*, 105 A.D.3d at 183, 961 N.Y.S.2d at 89.  However, at a minimum, VHI has raised sufficient issues of fact to preclude summary judgment and entitle it to discovery in support of its usury defense.

### B.    The Damages Penalty Provision is an Unenforceable Penalty

In its motion, Union asserts that the Court should apply the Damages Penalty Provision in § 8 of the Note, to impose a staggering *$362,280.93* in damages on a mere $75,000 promissory note, which would represent over a 550% return.  *See* Pls. Mem. at 11.  Because Union's

---

[7] Perhaps because of this, Union rebuffed VHI's requests for discovery concerning whether these dubious assessments were genuinely for reimbursement, or in fact are a form of disguised interest.  *See* Press Dec., Exh. 11.  Because this critical information is peculiarly within the possession of Union, the Court should not grant summary judgment against VHI before it has the opportunity to discover and confirm these material facts.  *See Hillair Capital*, 963 F. Supp. 2d at 341 (ordering discovery concerning disguised interest payments in connection with usury defense).

[8] To the extent that there is any doubt of Union's usurious intent, it is confirmed by the pre-payment penalty provisions of § 4(c) of the Note.  Under them, during the first six months, Union allows VHI to prepay the loan according to a rate schedule ranging from 18% plus accrued interest in the first month (for an effective rate of at least 216% per annum) to 48% plus accrued interest in the fifth month (for an effective rate of at least 96% per annum).  These percentages are reflective of Union's understanding of the effective interest rate of the Note, and are one measure of what Union believed would make it whole if it was denied the opportunity to convert the loan to VHI shares and dump them in the market.

damages for the alleged breach are easily ascertainable, and the Damages Penalty Provision provides for a radically disproportionate remedy, the Damages Penalty Provision is an unenforceable penalty.

Under New York law a contractually agreed upon sum for liquidated damages will be sustained **only** where (1) actual damages may be difficult to determine, **and** (2) the sum stipulated is not disproportionate to the possible loss. *See In re United Merchants & Mfrs., Inc*., 674 F.2d 134, 142 (2d Cir. 1982); *Bell v. Ebadat*, 2009 WL 1803835, at *2 (S.D.N.Y. June 16, 2009) (Sullivan, J.) (finding liquidated damages provision an unenforceable penalty where actual damages were a fraction of the damages called for by the clause).

Where the damages flowing from a breach of contract are ascertainable, a contractual provision purporting to impose a liability above and beyond those damages is an unenforceable penalty. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co*., 369 F.3d 34, 71 (2d Cir. 2004) (finding contractual penalty of 0.1% of total contract price for each day of delay penal in nature and unenforceable); *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 998 F. Supp. 2d 301, 336 (S.D.N.Y. 2014) (finding provision imposing forfeiture of upfront fees in case of a willful breach of contract an unenforceable penalty); *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 568 (S.D.N.Y. 2003) (finding lender's liquidated damages provision imposing monthly penalty for breach of contract unenforceable).  In such a case, the contractual remedy— however styled—is disproportionate to the non-breaching party's actual damages. *See 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc*., 24 N.Y.3d 528, 536, 25 N.E.3d 952, 957 (2014) (finding purported imposition of damages for future rent, in addition to recovery of possession of premises, appears on its face to be a penalty); *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc*., 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018 (1977) ("A clause

which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion. A promisor would be compelled, out of fear of economic devastation, to continue performance and his promisee, in the event of default, would reap a windfall well above actual harm sustained.").

Whether a provision is an unenforceable penalty is a matter of law to be decided by the court. *See Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (citing *Vernitron Corp. v. CF 48 Associates*, 104 A.D.2d 409, 409, 478 N.Y.S.2d 933, 934 (2nd Dep't 1984)). "[A]ny doubt with respect to whether the relevant provision is an unenforceable penalty or a permissible liquidated damages clause should be resolved in favor of a construction which holds that the provision is a penalty." *Bristol*, 310 F. Supp. 2d at 566; *see also Rattigan*, 739 F. Supp. at 169-70 (quoting *City of New York v. B & M Ferry Co.*, 238 N.Y. 52, 56, 143 N.E. 788 (1924)).

Here, contrary to Union's assertions, at the time of the Note, it was not at all difficult to calculate damages for VHI's purported breach.  Under New York law, contractual expectation damages for the non-delivery of publicly traded shares are measured as of the date of the alleged breach.[9]  Thus, under the law, there is no need to engage in speculation concerning what Union might have done if it had received the conversion shares, or to be concerned about fluctuations in the price of the shares, because the law mandates a calculation of the damages on a single, specific date.  Once the Court determines the date of the breach, the damages can be easily

---

[9] *See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2002) (finding "[t]here is simply no reason why, assuming a jury finds [defendant] liable for breach of contract, money damages would not adequately compensate [plaintiff] for [defendant's] breach"); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir.1990) ("The damage award resulting from a breach of an agreement to purchase securities is the difference between the contract price and the fair market value of the asset at the time of breach, not the difference between the contract price and the value of the shares sometime subsequent to the breach."); *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 301 (S.D.N.Y. 2010).

18

established.

To the extent that the Note is enforceable, which VHI disputes, VHI submits that the date of the breach is February 17, 2016, the date on which VHI clearly and unequivocally stated that it would honor neither the First Notice of Conversion, nor any other notice of conversion.[10]  See Press Dec., Exh. 5.  On that date, VHI's public shares closed at $0.002 per share.  See Press Dec., Exh. 13.  Accordingly, on the date of the breach, the 21,310,643 shares for which Union now claims damages were worth *$42,621.29*—or only *11%* of the egregious *$362,280.93* that Union seeks in this action.

It is clear that the formula in the Damages Penalty Provision was not a fair attempt to estimate in advance Union's actual damages under New York law, because it intentionally departs from the measurement of Union's actual loss on the date of the breach, and purports instead to award Union damages based upon an unfixed, and constantly shifting "high trade price at any time on or after the day of exercise," at Union's choosing.  *See* Pls. Mem. at 10 (quoting Section 8 of the Note).  Indeed, under the literal terms of the Note, Union could continue to increase its claim repeatedly in the event that VHI's stock price climbed during the pendency of this litigation.[11]  This makes no sense, and alone renders the provision unenforceable.

Because, at the time of the Note, the amount of Union's damages for such a breach could be easily determined, and because Union's calculation of its damages under the Damages Penalty Provision is wildly disproportionate to any likely actual damages, the Damages Penalty Provision is an unenforceable penalty.  Accordingly, Union's motion for a summary judgment

---

[10] Indeed, in its brief, Union admits that on that date VHI "repudiated the Note and SPA, and conclusively stated that it would not honor future conversion notices."  Pls. Mem. at 1 (emphasis added).

[11] For this additional reason, the Damages Penalty Provision is unenforceably vague, because rather than actually liquidate Union's damages, it creates greater uncertainty, and is susceptible to shifting meanings.

based upon the flawed and unenforceable formula in that provision must be denied.

      **C.**    **Union's Motion for Summary Judgment on First and Fourth Causes of Action for Specific Performance of the Conversions Must Be Denied Because Union Has An Adequate Remedy At Law**

      Union also erroneously persists in seeking specific performance of the toxic conversion features of the Note as to certain asserted "remaining shares," in spite of the Court's prior finding that Union's monetary damages, if any, are ascertainable and available at law.  *See* Pls. Mem. at 11-14.  Because, Union's contract damages, if any, are easily ascertainable as of the date of the alleged breach, Union's request for specific performance—*i.e.*, forcing VHI to undergo massive dilution of its share price by issuing millions of publicly tradable shares—must be rejected.

      "In general, specific performance will not be ordered where money damages would be adequate to protect the expectation interest of the injured party." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 2006 WL 1493132, at *8 (S.D.N.Y. May 31, 2006) (declining specific performance of conversion feature in convertible bonds of publicly traded company); *Erie R. Co. v. City of Buffalo*, 180 N.Y. 192, 73 N.E. 26 (1904) (finding specific performance not available unless remedies are incomplete and inadequate to accomplish substantial justice).  Specific performance only is an appropriate remedy "where 'the subject matter of the particular contract is unique and has no established market value." *Aristocrat Leisure*, 2006 WL 1493132, at *8 (citing *Van Wagner Adv. Corp. v. S & M Enters.*, 492 N.E.2d 756, 760 (N.Y.1986)).

      Based upon these principles, courts routinely refuse to order specific performance of rights to acquire publicly traded stock—including under convertible debt instruments—because such stock is easily valued at various points in time.  *See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2002) (denying specific performance in action involving publicly traded stock where "[t]here is simply no reason why, assuming a jury finds [defendant]

liable for breach of contract, money damages would not adequately compensate [plaintiff] for [defendant's] breach"); *Aristocrat Leisure*, 618 F. Supp.2d at 299 (S.D.N.Y. 2009) (noting that there is no dispute defendant's shares are available in the open market and the values of those shares on a given date are undisputed); *Waxman v. Envipco Pickup & Processing Servs.*, 2006 WL 1788964, at *3 (S.D.N.Y. June 28, 2006) (reasoning that by valuing depository receipts, which were tradeable securities representing stock, "as of the date when [defendant] failed to deliver [the receipts] reflects the true loss to plaintiffs at the time of breach, and eliminates any speculation concerning how long plaintiffs would have held on to the securities if they had been delivered as promised"); *Laurus Master Fund, Ltd. v. Valcom, Inc.*, 2002 WL 432686, at *3 (S.D.N.Y. Mar. 19, 2002) (finding that lender seeking a mandatory injunction for specific performance of conversion rights failed to establish that damages were inadequate, where there was a notice of conversion on a definite date, such that damages were ascertainable); *Simon v. Electrospace Corp.*, 28 N.Y.2d 136 (N.Y. 1971) (noting that specific performance is not appropriate where the claim involved publicly traded stock).

As Judge Leisure explained in *Aristocrat Leisure*:

> The subject matter of the Indenture-the underlying Aristocrat shares-has an established market value, and, therefore, there would be no difficulty proving damages with reasonable certainty. The Indenture requires the delivery of shares of widely available, publicly-traded stock, a fungible item that is not "unique in kind, quality or personal association." Suitable substitutes for this item are easily obtainable in the open market. It is for these reasons that courts have found damages to be an adequate and appropriate remedy when specific performance would involve the delivery of shares that are freely available on the open market.

*Aristocrat Leisure*, 2006 WL 1493132, at *8 (internal citations omitted); *see Aristocrat Leisure*, 618 F. Supp. 2d at 299 ("There is no dispute that Aristocrat shares are available in the open market, and the values of those shares on a given date are undisputed."); *Laurus Master Fund*,

2002 WL 432686, at *2.

VHI's shares are publicly traded and easily valued on the date of the alleged breach. VHI common stock is not alleged to be unique or peculiar, and its value to Plaintiff is purely monetary in nature.  As the Court found in its Order to Show Cause, "[t]he market price for stocks that are publicly traded, such as [VHI's], 'is generally considered to be ascertainable,' and Plaintiff has failed to give 'any plausible reason why this should not be the case here other than that the stock price fluctuates.'" Press Dec., Exh. 6 at 2.  Should Union be entitled to a remedy in this action, alleged fluctuations in the market price of VHI's shares are irrelevant, because Union's breach of contract damages can be easily computed as of the date of the alleged breach. *See Lucente*, 310 F.3d at 262; *Sharma*, 916 F.2d at 825.  Although a start-up company, with substantial debt, VHI is in strong financial condition and is not imminently at risk of becoming insolvent.  *See* Braune Dec. ¶¶ 11-12; Press Dec., Exh. 7 at 6.

Accordingly, the Court should deny Union's request for specific performance of the conversion right in § 4(a) of the Note.  Indeed, VHI submits that the Court should award VHI summary judgment denying Union's claim to specific performance once and for all.

### D.     Union is Not Entitled to 24% Default Interest, Because Union Elected for Expectation Damages Based Upon VHI's Refusal to Convert the Note

Next, the Court should deny Union's motion for an award of 24% Default Interest on top of its alleged expectation damages for the non-delivery of shares.  *See* Pls. Mem at 14.

Union's claim to default interest on top of its alleged expectation damages is mistaken, because Union is not seeking to enforce the *payment* provisions of the Note, under which interest is due, but rather the *conversion* provisions of the Note, under which Union's damages are fixed as of the date of the alleged breach.  *See Lucente*, 310 F.3d at 262; *Sharma*, 916 F.2d at 825. Under the plain language and structure of the Note, once Union purports to convert debt into

VHI shares, it does not expect or seek *interest*—let alone default interest—but rather *equity* in VHI. Having now made the election to convert the Note into VHI shares, and having sought its purported expectation damages for failure to honor the conversion feature of the Note, Union's claim to 24% Default Interest on top of its alleged expectation damages is unenforceable.

### E.     Union Is Not Entitled to Attorneys' Fees

Finally, to the extent that the Court denies Union's motion on the substantive terms of the Note, the Court should deny Union's request for an award of attorneys' fees. To the extent that the Court may find that VHI is contractually liable for attorneys' fees, VHI requests a hearing concerning the reasonable amount of those fees. VHI submits that it should not be liable for opposing the many egregious and overreaching positions that Union has sought to take in this action.

## CONCLUSION

For the reasons stated above, VHI respectfully requests that the Court deny Union's motion for partial summary judgment in its entirety.

Dated: New York, New York
May 13, 2016

Respectfully submitted,

**PRESS LAW FIRM PLLC**

By:  */s/ Matthew J. Press*
Matthew J. Press

144 East 44th Street, Eighth Floor
New York, NY  10017
tel: (212) 922-1111
fax: (347) 342-3882
cell: (347) 419-0983

*Attorneys for Defendant Vape Holdings Inc.*

24